[Civ. No. 9901.   Second Dist., Div. Three.   Apr. 27, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. DOROTHY G. REEVES et al., Defendants and Appellants.

Dahlstrum & Walton for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Bradley A. Stoutt, Deputy Attorney General, for Plaintiff and Respondent.

SHINN, J.*—Truman Reeves, his wife Dorothy, Ernest Stoelting, John Holberton, Earl Lange, Robert Lange, Charles Williams and Merrill Finley were accused by information of conspiracy with each other and "with other persons, names unknown" to violate section 484 of the Penal Code (theft) in violation of section 182 of the Penal Code.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

The court granted a motion of Holberton for dismissal under section 995, Penal Code. During the trial, upon motion of the prosecutor that he intended to use Stoelting as a witness for the People, the court discharged Stoelting. The trial proceeded to a jury; Earl Lange, Robert Lange and Williams were acquitted and Truman Reeves, Dorothy Reeves and Finley were convicted. Truman and Dorothy made motions for a new trial which were denied. Finley's motion for a new trial was granted, his case was submitted to the court and he was acquitted.

Truman and Dorothy Reeves appeal. Their brief advances numerous grounds for reversal of the judgments.

We consider first the consequences which arose from the fact that of the eight defendants charged with conspiracy only a husband and wife stand convicted.

The offense charged was committed in 1963. At that time it was the law that a husband and wife could not criminally conspire with each other. The jury was instructed that this was the law. It was not charged that any conspiracy was entered into after it was decided by the Supreme Court that a husband and wife could conspire with each other to violate the law. (*People* v. *Pierce,* 61 Cal.2d 879 [40 Cal.Rptr. 845, 395 P.2d 893].) Prior to that time an agreement of a husband and wife to violate the law was not a crime.

The facts of the case may be stated in broad outline. Truman Reeves caused the incorporation of United Missionary Corps (U.M.C.); Dorothy was one of the incorporators. They set up shop in a rented house in Glendale as headquarters from which to carry on their operations. Their plan was to solicit funds from door to door to be used for the distribution of religious literature, including bibles in several languages. Through newspaper advertising which promised earnings of $2.25 per hour for persons without business experience a force of more than 40 workers was recruited and maintained. The workers were schooled in what is inelegantly but commonly known as a ''pitch.'' They wore uniforms, went from door to door soliciting funds for the distribution of bibles, and would also promise that prayers would be offered on behalf of any unfortunates who felt themselves in need of divine assistance. There were groups under the leadership of crew chiefs. Territory was allotted to the different groups and as one territory was worked out new territory was assigned. The money was turned in each day. Each solicitor received as compensation 60 percent of his collections; 10 percent went to

crew chiefs and the remainder to U.M.C. Truman received $55 per week and Dorothy $45 per week at first and later $75 per week. The money came in steadily but not in sufficient quantity to satisfy Reeves. He conceived the idea of identifying his solicitors with the charitable purpose of Braille Institute of America, Inc. as a part of the solicitors' "pitch." From Braille he obtained literature and pictures, which were included in the folders of the solicitors. He obtained no authority from Braille to solicit funds for its use. The professed plan was to use the Braille literature in the solicitation of funds for the purchase and distribution of bibles in Braille. The consequence of the use of the literature was that it led contributors to believe that the solicitors were the authorized workers of Braille. Several of the contributors so testified. The Lange brothers and Williams testified they did not know U.M.C. was not authorized to solicit on behalf of Braille Institute. The conviction of Reeves implies a finding by the jury that he made use of the Braille literature and pictures to engender the belief on the part of contributors that their donations would go to the Institute. The conclusion that Reeves acted with a fraudulent purpose to deceive had ample support in the evidence. Between February 1962 and August 1963 the collections amounted to about $105,000. There was evidence that about $600 was used for the purchase and distribution of bibles. There was no satisfactory accounting for the remainder and no evidence that it was used for charitable purposes.

The immediate question is whether the conviction of Truman and Dorothy can stand when the charges against Holberton were dismissed under section 995 of the Penal Code, Stoelting was discharged under section 1099 of the Penal Code and Earle Lange, Robert Lange, Williams and Finley were acquitted. (*People* v. *James,* 189 Cal.App.2d 14 [10 Cal.Rptr. 809, 91 A.L.R.2d 697].)

If the dismissals as to Holberton and Stoelting were equivalent to acquittal the judgment against the Reeves would be invalid under the rule stated in *People* v. *James, supra,* p. 16: " 'The rule is well settled that one defendant in a prosecution for conspiracy cannot be convicted where all of his alleged co-conspirators, be they one or more, have been acquitted, or discharged under circumstances that amount to an acquittal.' (97 A.L.R. 1312, 1316.) "

The dismissal of the charge as to Holberton under section 995 Penal Code did not operate as an acquittal. (Pen. Code,

§ 999.) The discharge as to Stoelting was not the equivalent of an acquittal. Both could still be regarded as conspirators. (*People* v. *Gilbert,* 26 Cal.App.2d 1, 25-26 [78 P.2d 770].)

■ The first question is whether we can presume, in support of the verdict and judgment, that the jury found that either Holberton or Stoelting conspired with Truman and Dorothy Reeves. We do not believe it can fairly and reasonably be said that the jury found that either Holberton or Stoelting was a conspirator.

The jury were considering the possibility of convicting only one of the defendants, (doubtless, Truman Reeves). During their deliberations they were returned to court for further instruction and asked "Can we bring in a verdict against one only in this case?" After conferring with counsel the court answered that the matter was covered by the instructions that had been given. The court also stated that the instructions were available to the jury but it does not appear that the jury consulted them. In further deliberations the jury remembered enough of the instructions to realize that it took at least two persons to engage in a conspiracy to commit a crime and that Truman and Dorothy could not conspire with each other. They gave up the idea of convicting only Truman Reeves. After further deliberation the jury were returned to court and they asked "Could an accomplice not on trial be named as a conspirator in order to bring in a verdict?" Without informing counsel as to the question asked the court answered: "The question which you have asked, I think is also covered in the instructions."

We can only look to the probabilities respecting the motives of the jury in asking the question. It was clearly their desire "to bring in a verdict." They had been instructed that a husband and wife could not criminally conspire with each other. They evidently knew it would be legal to find that the Reeves conspired with the defendants Lange, Williams and Finley, or with one or more of them. If they had been willing to convict any of them there would have been no need to ask the questions. At that time they were not willing to convict Finley along with Reeves. They considered the possibility of finding that the Reeves conspired with someone other than Finley and the three solicitors, whom they did not believe to be guilty. They had in mind someone who was not on trial and yet was deeply involved. They designated such a person as an accomplice. Only Holberton and Stoelting fitted in as accomplices. If either one was found to be a member of the

conspiracy, Reeves, and possibly his wife, could be convicted and the other defendants could be acquitted. The conviction of Reeves alone was what the jury had in mind when they asked the first question.

It was in the interests of the Langes, Williams and Finley that the jury be advised that they could find that an "accomplice" not on trial could be named as a conspirator. It was of no interest to the Reeves that the jury be so advised. The court was in error in failing to properly answer the jury's second question, but appellants suffered no prejudice.

To a legal mind an answer could be found in the court's definition of "conspiracy," but, although the jurors had heard the reading of the instructions, they had not been told in language which they understood, and they did not know, that a conspiracy could have existed between the defendants and one or more persons who were not on trial.

The error materially weakened the case of the People. It led to the conviction of Finley as a conspirator with the Reeves when the jury, if it had been properly advised, might have found that a conspiracy existed between the Reeves and Stoelting and Holberton.

We regard it as extremely improbable that the jury found that Reeves conspired with Stoelting or Holberton. To believe otherwise would be to substitute pure surmise for evidence and reasonable inference. Even if we were in doubt whether the jury found facts essential to establish the guilt of the Reeves we would have to give the appellants the benefit of the doubt. We are firmly of the opinion that the judgment cannot be supported upon the theory that the jury found that the Reeves conspired with either Stoelting or Holberton.

There is another feature of the instructions which deserves comment. The information alleged that the defendants conspired with each other and with "other persons, names unknown." The information was not read to the jury, the instructions were silent on the subject and the jury did not know that the information alleged that the defendants conspired with unknown persons.

No doubt it is proper to allege that a defendant or defendants conspired with each other or with persons whose names are unknown when it is expected there will be evidence which tends to support the allegation. In the present case there was no reason for alleging a conspiracy with unknown persons. There was no evidence that any of the 40 or more solicitors other than the Langes and Williams made any false represen-

tations. The verdict does not imply that the jury found that the Reeves conspired with unknown persons. The People do not contend that the vehrdict carries that implication.

The conclusions we have reached require a reversal of the judgments, notwithstanding the strong evidence that Truman Reeves was guilty of theft. The case demonstrates the inadvisability of throwing a conspiracy net over small fry such as the solicitors and office workers who were merely carrying out the terms of their employment by Reeves, and had no voice in his scheme and no interest in its success beyond their small earnings.

In view of the conclusions we have stated it is unnecessary to discuss other grounds of error.

The judgments are reversed.

Cobey, Acting P. J., and Moss, J., concurred.