[Crim. No. 20310. Second Dist., Div. Five. May 10, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
FRED KNOWLES HOLZER, Defendant and Appellant.

458

## Counsel

Ronald S. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General, William E. James, Assistant Attorney General, Robert F. Katz and Donald F. Roeschke, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

KAUS, P. J.—In a five-count indictment returned by the Grand Jury of the County of Ventura defendant and Merrill Shapiro were charged in count I with a conspiracy to violate section 245 of the Penal Code (Pen. Code, § 182, subd. 1); in count II with an assault with a deadly weapon (Pen. Code, § 245); in count III with burglary (Pen. Code, § 459); and in count IV with false imprisonment (Pen. Code, § 236). Count V charged defendant alone with possession of a firearm by a felon (Pen. Code, § 12021). Three prior offenses were alleged, but two were stricken before trial.

Defendant pleaded not guilty to all charges, and denied the remaining prior. Defendant's motion to set aside the indictment under section 995 of the Penal Code was denied, but a motion to suppress certain evidence was granted in part. Upon motion of the district attorney defendant's case was severed for trial from that of Merrill Shapiro.

After trial by jury defendant was found guilty on all counts. The burglary was determined to be of the first degree and the prior felony was found to be true.

Defendant's motions for a new trial and for probation were denied, and he was sentenced to state prison on counts III and V. Counts I, II and IV were "merged" into count III, and execution of sentence on count V was stayed pending determination of the appeal as to count III, the stay to become permanent upon the completion of the sentence on count III. (See *People* v. *Preston,* 21 Cal.App.3d 732, 736 [98 Cal.Rptr. 765].)

The evidence amply supports the verdicts. Essentially it was to the effect that defendant and Shapiro had agreed that defendant would beat up one Donald Holt, Jr., an attorney. Defendant threatened Holt with a gun, expressing his intention to kill him. He also committed a slight battery on his person. The proceedings were interrupted by Holt's secretary. Defendant was arrested shortly afterwards.

Defendant was advised of his constitutional rights both at the time of his arrest and again at the police station. Defendant indicated that he did not want to talk to the police about the incident, but would like to speak to Mr. Holt about "getting the matter straightened out."

Sergeant Hill then arranged for defendant to meet Holt in the booking area of the station. The conversation was, unknown to defendant, recorded by a hidden device and the recording was admitted over defendant's objections at his trial. Both Holt and Sergeant Hill claimed credit for the initial idea that the conversation be recorded.

Defendant did not testify, but offered expert testimony to the effect that he would have been intoxicated after consuming the alcohol and pills which the People's evidence tended to show he had taken.

## I.

Defendant's first contention on appeal is that his conviction for conspiracy must be reversed because the only other conspirator named in the indictment, Merrill Shapiro, was later acquitted. This argument derives from the rule that the crime of conspiracy necessarily requires the participation of at least two people, and where the guilt of only one is shown, the crime is incomplete. (*People* v. *Reeves,* 250 Cal.App.2d 490, 492 [58 Cal. Rptr. 517]; *People* v. *James,* 189 Cal.App.2d 14, 15-16 [10 Cal.Rptr. 809, 91 A.L.R.2d 697].) This rule is a logical imperative where all conspirators are tried together. Where separate trials are had this reasoning loses its force.

If a single jury trying X and Y for conspiracy were to find that X conspired with Y, but that Y did not conspire with X, the verdict could not stand. (See *Lubin* v. *United States,* 313 F.2d 419, 423; *People* v. *Reeves, supra,* 250 Cal.App.2d 490, 492.) But a jury trying X alone, can find that X and Y were co-conspirators and can properly convict X. (*People* v. *Sagehorn,* 140 Cal.App.2d 138, 146 [294 P.2d 1062]; *United States* v. *Koritan,* 182 F.Supp. 143, 145, affd. 283 F.2d 516.) The fact that Y is later acquitted of conspiring with X by a different jury on a different presentation of evidence, cannot affect the validity of the first conviction. (See 91 A.L.R. 2d 704; 16 Am.Jur.2d, Conspiracy, § 33, pp. 144-145.)

The case chiefly relied on by defendant, *Sherman* v. *State,* 113 Neb. 173, 174-175 [202 N.W. 413] was overruled in *Platt* v. *State,* 143 Neb. 131, 143 [8 N.W.2d 849].

## II.

■ Defendant next argues that the remaining prior conviction should have been stricken, and that his conviction under count V for a violation of section 12021 of the Penal Code (possession of a firearm by a felon) "cannot stand" because the prior offense charged was not a felony. The record, however, does not support defendant's position.

The evidence before the trial court was that after pleading guilty to a violation of section 11530 of the Health and Safety Code, defendant was placed on probation on May 29, 1968. The date on which he was alleged to have violated section 12021 was June 14, 1969. According to a minute order attached to his brief in this appeal, defendant was found in violation of probation on the 11530 charge on January 26, 1971, and was sentenced to the county jail for one year.

Defendant's position is that because the conviction under section 11530 was ultimately made a misdemeanor by virtue of the county jail sentence, any use of that conviction as a felony must fail. The fact is, however, that the offense had not been determined to be a misdemeanor until revocation of defendant's probation, about a year and a half after the offense alleged in count V. Where an offense is punishable either as felony or as a misdemeanor, depending on the sentence imposed, the offense is a felony until the time of sentencing. (*People* v. *Johnson,* 164 Cal.App.2d 470, 476 [330 P.2d 894].) Thus defendant had pleaded guilty to a felony at the time he was alleged to have been in violation of section 12021, and that the offense was later made a misdemeanor cannot change that fact. (Cf. *Meyer* v. *Superior Court,* 247 Cal.App.2d 133, 137 [55 Cal.Rptr. 350].)

## III.

█ The tape recording of defendant's conversation with Holt after defendant's arrest was made by the police at a time when defendant was in custody and had been advised of his right to remain silent and to have an attorney present before questioning. Defendant argues that the clandestine recording of the conversation and the use of it at trial, amounted to a violation of his rights under *Miranda* v. *Arizona,* 384 U.S. 436, 444 [16 L.Ed. 2d 694, 706, 82 S.Ct. 1602, 10 A.L.R.3d 974]. He contends that he was "confused, tricked and cajoled into thinking that his statements given to Mr. Holt would be kept in confidence and not used against him," and that Mr. Holt was in effect an agent of the police and had a responsibility to warn defendant that their conversation was being recorded.

*Miranda* proscribes police interrogation in absence of a voluntary waiver of the right to remain silent. The record here, however, demonstrates that there was no police interrogation. At the time defendant indicated that he wished to remain silent until he saw an attorney, he also requested to be able to speak with Mr. Holt. This request was granted. The decision, however, whether the meeting would take place at all was left up to Mr. Holt. Holt testified that he agreed to talk with defendant if defendant were "behind bars" and the conversation recorded. He was not requested by the police to ask any particular questions or to try to pin defendant down to any particular set of facts.

Clearly, if the police had continued to interrogate defendant at that time any statements would have been inadmissible. (*People* v. *Price,* 63 Cal.2d 370, 377 [46 Cal.Rptr. 775, 406 P.2d 55].) Here, however, the meeting was at the request of the defendant, not the police, and there is no indication that Holt was acting as an agent of the police.

It is immaterial whether the idea of tape recording the conversation originated with Holt or the police. The fact that the conversation was taped only affected the mode of proving its contents. (Cf. *United States* v. *White,* 401 U.S. 745, 751-753 [28 L.Ed.2d 453, 458-460, 91 S.Ct. 1122].)

## IV.

Before trial defendant moved to suppress certain materials, never described with particularity, contained in letters addressed to him at the Ventura County jail from the attorney who had been representing him. These materials, containing information relating to the charges against

defendant, had been sent by jail officials to the district attorney's office and copied pursuant to a request by an investigator.[1]

The prosecutor conceded "for the purposes of argument" that censoring mail between a defendant and his attorney may involve "some impropriety," and raised no objection to an order suppressing the material. He also stated at that time that he had no intention of offering the material into evidence, but that no prejudice had been shown to defendant and that, therefore, there was no basis for any relief beyond mere suppression. Defendant let the matter rest at that point, and the materials were suppressed, apparently without the court ever having examined their contents.

On appeal defendant argues that mere suppression was inadequate, for the prosecution had already had access to the correspondence. The People, on the other hand, argue that the censorship was not improper in the first place, and that, in any event, testimony of the district attorney's investigator that he learned nothing from the material which he did not already know, shows that defendant "has not met his burden of showing prejudice."

The People's first argument is the result of reflex, rather than reflection. It starts with the recognized right of a jailer to inspect mail to protect the jail's security (*Stroud* v. *United States,* 251 U.S. 15, 21-22 [64 L.Ed. 103, 111, 40 S.Ct. 50]; *Cox* v. *Crouse,* 376 F.2d 824, 826; *People* v. *Ray,* 181 Cal.App.2d 64, 69 [5 Cal.Rptr. 113]). It then proceeds on the assumption that such an inspection necessarily includes the right to read such mail— even correspondence between attorney and client—word for word.[2] Finally it jumps to the conclusion that once those servants of the law who have custody of a person accused of crime legitimately know what is in his mail, it makes no difference if they transmit their knowledge to those whose job it is to make the accusation stick.

Quite apart from the several non sequiturs on which this argument is based, it has nothing to do with this case. The plain fact is that the censorship was never undertaken for security reasons, but only to aid the

---

[1]The investigator was an employee of the district attorney's office. As far as the record shows, the idea of prosecution monitoring of correspondence between defendant and his counsel was the investigator's own and no attorney member of the prosecutor's staff is entitled to claim dubious credit therefor.

[2]Even convicted state prisoners retain the right "[t]o correspond *confidentially,* with any member of the State Bar . . . provided that the prison authorities may open and inspect such mail to search for contraband." (Pen. Code, § 2600, italics added.) It seems clear that the Legislature did not suppose that the permissible opening and inspecting of prisoners' mail necessarily destroyed all confidentiality.

investigation. That there might have been a legitimate way for the investigator to learn the contents of this correspondence without cooperation from the defense—which we very much doubt—surely does not mean that we must close our eyes to what really took place: a wholly unjustifiable intermeddling in the attorney-client relationship, quite unprecedented in our experience.

■ This does not, however, solve defendant's problems on this appeal. He submits that the misconduct must lead to a reversal. Yet he gives us no reason to suppose that if the misconduct somehow affected the fairness of the first trial which it preceded, the same would not be true with respect to the next one. If the conviction must be reversed simply because there was misconduct before the first trial, without any showing how it affected that trial, the next one seems doomed to the same fate and so on, ad infinitum. The only logical action to take would be to order the prosecution dismissed—yet no case known to us compels such a punitive disposition.[3]

The truth is that below defendant never claimed that the misconduct by itself affected or might affect the fairness of his trial. We do not have to decide who—the prosecution or the defense—would have what burden if defendant had created an issue on the question whether the prosecution's peek into his mail directly or remotely hampered the defense effort or made it more easily rebuttable. (Cf. *Alderman* v. *United States*, 394 U.S. 165, 183 [22 L.Ed.2d 176, 192, 89 S.Ct. 961].) The only relief defendant asked from the trial court was suppression, which is precisely the relief he got. No error, therefore, appears.

## V.

■ Defendant's final contention is that his conviction must be re-

---

[3]In *Black* v. *United States*, 385 U.S. 26 [17 L.Ed.2d 26, 87 S.Ct. 190], after certiorari had been denied, but before an application for rehearing had been filed, the Solicitor General advised the Supreme Court that the Federal Bureau of Investigation had bugged Black's hotel suite while the offense for which he was eventually convicted was under investigation and that, among others, the government agents had overheard conversations between Black and his attorney. Allegedly nothing relevant was overheard. Five justices of the Supreme Court, joining in a per curiam opinion, ordered a new trial "so as to afford the petitioner an opportunity to protect himself from the use of evidence that might be otherwise inadmissible." (385 U.S. at p. 29 [17 L.Ed.2d at p. 29].) Two dissenters felt that a limited remand for the sole purpose of developing the facts concerning the government's use of the illegally obtained evidence, would suffice. The significant fact is that no member of the court thought that the misconduct automatically vitiated the prosecution. Of course, in *Black* some kind of relief had to be granted because the defendant never knew of the bug at the time of his trial. In the case at bar the facts were well known and brought out at the pretrial hearing, for the lack of which the *Black* court reversed.

versed because the judge who presided over his trial died before hearing defendant's motion for a new trial. The argument is that, unlike an appellate court, the trial judge hearing a motion for a new trial is entitled to weigh the evidence. Since the judge who ruled on defendant's motion was not in a position to consider the demeanor of witnesses, defendant was in effect denied his right to have the evidence reweighed. (Pen. Code, § 1181, subd. 6.)

We cannot agree. Defendant had the benefit of a full jury trial. He has advanced no reason why the verdict is contrary to the law or evidence, and we see none. It is interesting to note that the points and authorities in support of motion for new trial filed in the trial court raised only two grounds: one—not raised on appeal—was that a delay in sentencing required a new trial; the other was the circular argument raised here, that the motion must be granted because it could not be properly heard. In any event, there is no error in having another judge hear and rule on the motion for a new trial when the trial judge dies before the motion can be heard. (*People* v. *Clifton,* 270 Cal.App.2d 860, 862 [76 Cal.Rptr. 193].)

We interpret the judgment "merging" the convictions on counts I, II and IV into that on count III as meaning that the court very properly decided that the provisions of section 654 of the Penal Code prevented the imposition of sentence on counts I, II and IV and, therefore, did not sentence defendant on those counts.

Thus interpreted the judgment is affirmed.

Stephens, J., and Aiso, J., concurred.

A petition for a rehearing was denied June 2, 1972, and appellant's petition for a hearing by the Supreme Court was denied July 5, 1972.