[Civ. No. 13718. Fourth Dist., Div. Two. Jan. 14, 1975.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,
Respondent;
HAROLD EUGENE JACKSON, Real Party in Interest.

COUNSEL

Lowell E. Lathrop, District Attorney, and Kenneth L. Kloepfer, Deputy District Attorney, for Petitioner.

No appearance for Respondent.

James H. McDaniel for Real Party in Interest.

OPINION

**KERRIGAN, J.**—This case presents the novel question of whether a person accused of conspiracy can lawfully be tried when all his alleged coconspirators have been acquitted of the charge.

On February 15, 1972, Harold Eugene Jackson ("Defendant"), Michelle Jones and Benny Finch ("Codefendants") were held to answer upon a felony complaint.

On February 18, 1972, an information was filed charging Jackson, Jones and Finch with conspiracy to commit robbery (Pen. Code, § 182), robbery (Pen. Code, § 211), and murder (Pen. Code, § 187).

On April 26, 1972, the court severed the trial of Defendant from that of Jones and Finch.

In May 1972, Defendant was tried and convicted on all counts of the information, including the conspiracy charge.

In June 1972, Jones and Finch were tried and acquitted of all charges, including the conspiracy count.

Defendant appealed his conviction. For reasons not pertinent to the issue raised in this review, this court reversed the judgment of conviction by virtue of an unpublished majority decision handed down in February 1974.

The People once again proceeded against Defendant on the charges contained in the February 18, 1972, information. In May 1974, Defendant

moved to dismiss the conspiracy count of the information. On June 3, 1974, the motion was granted.

The prosecution then sought extraordinary relief for the purpose of having the order of dismissal vacated and we issued an alternative writ for the purpose of reviewing the integrity of the court's order dismissing the conspiracy count.

■ A criminal conspiracy is a combination for an unlawful purpose. (Pen. Code, § 182; Perkins,. Criminal Law (2d ed. 1969) 614; .1 Witkin, Cal. Crimes (1963) § 105 at p. 99.) By definition, a conspiracy is an agreement; the perpetration of the crime requires—indeed, consists in—the proscribed concurrence of at least two parties. (*People* v. *Reeves,* 250 Cal.App.2d 490 [58 Cal.Rptr. 517]; *People* v. *James,* 189 Cal.App.2d 14 [10 Cal.Rptr. 809, 91 A.L.R.2d 697]; Perkins, Criminal Law (2d ed. 1969) 622; 1 Witkin, Cal. Crimes (1963) § 109 at p. 105; *Developments in the Law—Criminal Conspiracy,* 72 Harv.L.Rev. 920, 949.)

In the instant case, the trials of the alleged conspirators were severed; Jones and Finch were acquitted of the charged crime before the present information was filed. Defendant Jackson claims that the exoneration of all his alleged coconspirators leaves him, effectively, in the position of one who is charged with accomplishing the legal impossibility of conspiring with himself alone. The court below agreed that this is so, and consequently dismissed the conspiracy count.

■ Where all of the alleged participants in a conspiracy are tried together, it is a logical and legal imperative that the jury cannot return a verdict of guilty against only one defendant. (*Lubin* v. *United States* (9th Cir. 1963) 313 F.2d 419; *People* v. *Holzer,* 25 Cal.App.3d 456 [102 Cal.Rptr. 11]; *People* v. *Reeves, supra,* 250 Cal.App.2d 490.) In a single trial of coconspirators, the jury determines at one moment and on the same evidence and arguments the culpability of all the participants. Application of this "consistency rule" provides the court with two checks upon the jury: first, it insures that the jury will adhere to the conspiracy requirement of the concurrence of at least two guilty minds; and second, it prevents the jury from weighing the same pieces of evidence differently in regard to each of the alleged conspirators. (See *Developments in the Law—Criminal Conspiracy,* 72 Harv.L.Rev. 920, 972-974.)

It has been suggested that the consistency rule also applies to the situation in which the trials of coconspirators are severed. (See 72

Harv.L.Rev. 920, 972.) The federal courts have consistently held that when one of two alleged coconspirators has been acquitted in a severed trial, the reversal of the first-tried coconspirator's conviction is required. (*Romontio* v. *United States* (10th Cir. 1968) 400 F.2d 618; *Lubin* v. *United States* (9th Cir. 1963) *supra,* 313 F.2d 419.) However, the consistency rule has not been followed where the disposition of the conspiracy count regarding the second-tried of two coconspirators has amounted to something less than an acquittal. Where the second coconspirator has remained uncharged or his case has been dismissed nolle prosequi, the conviction of the first-tried coconspirator has been allowed to stand. (*United States* v. *Fox* (3d Cir. 1942) 130 F.2d 56; *United States* v. *Koritan* (E.D.Pa. 1960) 182 F.Supp. 143.) Similarly, the consistency rule has not been applied when one conspirator has pled guilty and subsequently, in a severed trial, his alleged coconspirators have been acquitted. (*United States* v. *Strother* (5th Cir. 1972) 458 F.2d 424; *Rosecrans* v. *United States* (5th Cir. 1967) 378 F.2d 561.)

But the federal courts have extended the consistency rule to the severed trial situation summarily, with little regard for its logical application. By extending this rule from the single to the severed trial situation, these courts have—at least implicitly—assumed that the same evidence would be presented at both trials (an unwarranted assumption) *and* that when the same evidence is presented to two different juries, that both must evaluate and weigh that body of evidence in like ways so as to reach identical judgments.

Perhaps the most cogent criticism of the application of the consistency rule to the severed trials of coconspirators was made in *Platt* v. *State* (1943) 143 Neb. 131 [8 N.W.2d 849]: "We think that the verdict of a jury on a separate trial, finding one of two persons charged with conspiracy to be guilty, *concludes also the guilt of the other for the purposes of that trial,* . . . This element of the crime having been established as against the convicted defendant, the crime was complete and the conviction final as to him, irrespective of what some other jury on different evidence might decide. The rule cannot logically be otherwise." (P. 855, italics added.)

The Fifth Circuit has recently agreed that the consistency rule has no applicability in the severed trial situation. (*United States* v. *Musgrave* (5th Cir. 1973) 483 F.2d 327, 333.) The *Musgrave* court indicated that insofar as application of the consistency rule to severed trials was concerned, it was of no import whatever whether the first or second tried conspirator was the one acquitted.

A California court recently refused to apply the consistency rule to the severed trial situation. (*People* v. *Holzer, supra,* 25 Cal.App.3d 456, 460.)

■ We are in agreement with the *Holzer, Platt* and *Musgrave* decisions: the consistency rule has no applicability to the situation in which coconspirators' trials are severed. Application of the consistency rule in this situation neither insures that the two juries understand the crime of conspiracy nor that they evaluated the facts of the case consistently in regard to each conspirator. Hence, the consistency rule is not dispositive of this case.

■ But this is not to say that the trial court erred in its ruling. Defendant Jackson recognizes that the consistency rule is not applicable herein, but rather argues that the jury in the prior Jones-Finch trial determined that he and his alleged coconspirators did not, in fact, conspire as the state has charged, and that this determination is binding on the state at his subsequent trial by operation of the doctrine of collateral estoppel.

■ ■ Historically, criminal defendants have been protected from accusatorial harassment by the constitutional prohibition against double jeopardy—and it has been thought unnecessary to import the doctrines of res judicata and collateral estoppel from the civil field to further protect them.[1] However, some authorities have suggested that the aforesaid doctrines may appropriately be applied in criminal cases (i.e., where the doctrine of double jeopardy is inapplicable) in order to prevent the state from pursuing multiple prosecutions regarding a single transaction in situations where the first prosecution has failed. (See *Statutory Implementation of Double Jeopardy Clauses,* 65 Yale L.J. 339, 349; *Developments in the Law—Res Judicata,* 65 Harv.L.Rev. 818, 874.)

The doctrine of res judicata has been applied in federal criminal cases (*United States* v. *Oppenheimer* (1916) 242 U.S. 85 [61 L.Ed. 161, 37 S.Ct. 68, 3 A.L.R. 516]; *Sealfon* v. *United States* (1947) 332 U.S. 575 [92 L.Ed. 180, 68 S.Ct. 237]) and in California (*People* v. *Ford,* 65 Cal.2d 41 [52

---

[1]Res judicata means that an existing final judgment is conclusive as to the rights of the same parties in all subsequent actions on matters specifically adjudicated in the first suit. Collateral estoppel, on the other hand, is a doctrine of less extensive coverage and may be asserted in a subsequent suit on a different cause of action to prevent relitigation of a particular issue actually litigated in the prior judgment. (*Busick* v. *Workmen's Comp. Appeals Bd.* (1972) 7 Cal.3d 967, 972 [104 Cal.Rptr. 42, 500 P.2d 1386]; 29 Cal.Jur.2d, §§ 214-215.)

Cal.Rptr. 228, 416 P.2d 132]). And, in a recent decision, the California Supreme Court held that the doctrine of collateral estoppel may be appropriately applied to criminal cases provided certain criteria are met. (*People* v. *Taylor,* 12 Cal.3d 686 [117 Cal.Rptr. 70, 527 P.2d 622].)

■ The *Taylor* court indicated that if the doctrine of collateral estoppel is to be applied to bar litigation of an issue in a criminal matter the three prerequisite requirements historically associated with the civil doctrine of collateral estoppel must be met: (1) the issue *necessarily* litigated at the previous trial must be identical to the one sought to be relitigated; (2) the previous trial must have resulted in a final judgment on the merits; and (3) the party *against* whom the estoppel is asserted must have been a party (or in privity with a party) in the previous trial. (*Ibid.,* pp. 686, 691.) The court went on to point out that mutuality in regard to this third requirement is not essential: the party benefiting from collateral estoppel need not have been a party at the previous trial; it is only necessary that the party bound by the doctrine was a party previously. (*Ibid.,* pp. 686, 692.)

■ The foregoing criteria are satisfied in Jackson's case. First, the factual issue is identical to that previously litigated in the Jones-Finch trial, to wit: Did Jones, Finch and Jackson conspire to commit the robbery alleged in the indictment? Second, the acquittal arrived at in the Jones-Finch trial was a final determination on the merits, adjudging that Jackson, Jones and Finch did not conspire to commit robbery. Third, the state—the party to be bound by the estoppel—was a party to the previous trial, wherein it had every opportunity to prove its conspiracy charge against the three alleged coconspirators. ·

In regard to this last requirement, the *Taylor* court observed that other jurisdictions have been reluctant to apply collateral estoppel to criminal cases when the same defendant is not involved in both actions (e.g., when mutuality is not present), on the basis that to do so could conceivably compound the results of a possibly erroneous acquittal in the first trial; but the court concluded that "notwithstanding the lack of identity of the parties defendant, the state should be barred by the doctrine when in proceeding against an accused it must rely *vicariously* on a factual determination which was rejected by the trier of fact at a prior trial of a perpetrator of the identical crime charged against him." (*People* v. *Taylor, supra,* 12 Cal.3d 686, 692, original italics.)

In *Taylor, supra,* defendant was one of three persons involved in the armed robbery of a liquor store; actually, he was the driver of the

getaway car and never entered the store; during the robbery, one of his accomplices was shot and killed by the storekeeper's wife; the remaining accomplice was tried to determine whether or not he possessed' the requisite malice at the time of the robbery to be convicted of the murder of his partner; the surviving accomplice was acquitted of the murder charge; subsequently, Taylor was brought to trial for murder; the Supreme Court held that the state was collaterally estopped from bringing this charge, since malice could only have been possessed by the acquitted perpetrator and vicariously imputed to Taylor.

In Jackson's case, we are not confronted with a vicarious liability situation. We are faced with a case of interdependent or joint responsibility. But a close analogy may be drawn between the two situations. In *Taylor* the defendant could not have committed the alleged crime *unless* the previously acquitted perpetrator had committed said crime. Similarly, *unless* Jones and Finch engaged in a conspiracy with Jackson (which it has been determined they did not do) the latter cannot, by definition, have committed the criminal act charged. As in *Taylor,* it is impossible for Jackson to have committed the crime charged alone.

The *Taylor* court implicitly reasoned that when the same set of operative facts are presented at the first trial of a perpetrator of the crime charged, that the state should be estopped from retrying the *identical* factual issues at the subsequent trial of a second defendant. If both prosecution and jury adequately perform their respective functions at the first trial, justice should be served and the concern for compounding the results of an erroneous acquittal should cease to be a consideration regarding application of the estoppel doctrine.

Since the same facts offered to prove the conspiracy at the Jones-Finch trial will be offered at Jackson's trial, reason dictates that collateral estoppel be applied in this case.

In addition, traditional policy considerations underlying collateral estoppel mandate the application of the doctrine in the present case. (See *People* v. *Taylor, supra,* 12 Cal.3d 686, 695.) First, judicial economy will be promoted in that court time will not be wasted retrying an issue of fact which has once been litigated. Second, the possibility of inconsistent verdicts is averted.[2] If collateral estoppel were not invoked in Jackson's case, the second trial on the issue of conspiracy might result in conviction

---

[2]This consideration, though closely related, is distinguishable and distinct from conspiracy's "consistency rule" discussed elsewhere in this opinion.

of Jackson on that charge. The *Taylor* court felt that such inconsistent verdicts could well compromise the integrity of the criminal justice system in the eyes of the public and concluded that potentiality should be avoided whenever possible. (*Ibid.,* pp. 695-696.) The third policy consideration which underlies traditional estoppel doctrine—the prevention of harassment through vexatious litigation—does not appear to be present when, as here, different defendants are tried but once in separate trials. But *Taylor* noted that the fulfillment of the first two estoppel policy considerations far outweighed the absence of this last consideration, and applied the doctrine. (*Ibid.,* p. 696.) Finally, *Taylor* indicated that collateral estoppel may be applied with particular propriety in conspiracy cases where only one of a number of alleged conspirators, in a separate trial, is convicted while his alleged coconspirators are acquitted. (*Ibid.,* pp. 694-695.)

Consequently, the prosecution is estopped from charging Defendant Jackson with conspiracy to commit robbery.

The alternative writ is discharged and the petition for a peremptory writ of mandate is denied.

Gardner, P. J., and Kaufman, J., concurred.