[No. F002058. Fifth Dist. July 10, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
JOE NUNEZ, JR., Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of The Facts and parts II through VII.

216

COUNSEL

James F. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Edmund D. McMurray and Richard Thomson, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**BEST, J.**—Defendant Joe Nunez, Jr., was convicted of count I, conspiracy to commit murder for financial gain (Pen. Code,[1] §§ 182, 187, 190.2, subd. (a)(1)), and count II, first degree murder (§ 187). The jury found to be true the special-circumstance allegation that the murder was intentional and carried out for financial gain (§ 190.2, subd. (a)(1)). An allegation that defendant personally used a firearm in the commission of the murder within the meaning of sections 12022.5 and 1203.06, subdivision (a)(1), was found by the jury to be untrue. In a bifurcated trial, the trial court subsequently found that defendant had previously been convicted of one violent felony within the meaning of sections 667.5, subdivision (a), and 667.6.

For his convictions of conspiracy to commit murder and first degree murder, defendant was sentenced to concurrent terms of life imprisonment without possibility of parole. A three-year enhancement was imposed pursuant to section 667.5 and ordered to be served prior to the life term. For reasons hereafter stated, we reject defendant's multiple contentions of reversible error and affirm the judgment.

### The Facts*

. . . . . . . . . . . . . . . . . . . . . . . . .

### Discussion

#### I

*Does collateral estoppel bar defendant's convictions for conspiracy to commit murder and murder?*

Pursuant to defendant's request, we take judicial notice of the following matters:

Jo Ann Johnson and Manuel Medina Galvan (Medina) were each tried separately for conspiring with one another and defendant to murder Dwayne Johnson and for murdering Mr. Johnson;

Jo Ann Johnson was tried by jury in San Luis Obispo County and on September 1, 1981, found not guilty of the charged offenses but guilty of

---

[1]All statutory references are to the Penal Code unless otherwise indicated.
*See footnote on page 214, *ante.*

the lesser included offenses of conspiracy to commit voluntary manslaughter and voluntary manslaughter, together with a finding that she was a principal and was armed with a firearm during the commission of said crime;

Although finding Mrs. Johnson not guilty of murder, which normally alleviates the duty to find on a special-circumstance charge, the jury found the charged special circumstance (that the murder was intentional and carried out for financial gain) to be untrue;

Medina was tried in Santa Barbara County by jury and on June 4, 1982, found not guilty of the charged offenses but guilty of the lesser offenses of conspiracy to commit voluntary manslaughter and voluntary manslaughter, together with a finding that he was armed with a firearm but did not personally use a firearm during the commission of the homicide.

Defendant contends that the acquittal of his alleged coconspirators, Jo Ann Johnson and Manuel Medina, of the charges of conspiracy to commit murder and murder compels reversal of his convictions for these same crimes. His contention is premised upon the applicability of the doctrine of collateral estoppel. For reasons that follow, we reject defendant's contention.

A. *Collateral estoppel as applied to defendant's conviction for conspiracy to commit murder.*

When two or more alleged coconspirators are jointly tried, it is generally held that acquittal of all persons with whom a defendant is alleged to have conspired precludes conviction of the remaining defendant. This result is compelled by the rule of consistency of verdicts because, as Justice Cardozo once noted, "It is impossible in the nature of things for a man to conspire with himself." (*Morrison* v. *California* (1934) 291 U.S. 82, 92 [78 L.Ed. 664, 671, 54 S.Ct. 281]; see *People* v. *James* (1961) 189 Cal.App.2d 14, 16-17 [10 Cal.Rptr. 809, 91 A.L.R.2d 697]; see also Annot. (1983) 19 A.L.R.4th 192, 198-201.)

There is a division of authority as to whether this rule of consistency of verdicts will apply to alleged coconspirators who are tried separately.

The following cases applied the rule even though the acquittals of all alleged coconspirators were in separate trials. (*Romontio* v. *United States*

(10th Cir. 1968) 400 F.2d 618; *People* v. *Levy* (1939) 299 Ill.App. 453 [20 N.E.2d 171].)

Other courts, however, have refused to extend the rule to the separate trial situation. (*People* v. *Holzer* (1972) 25 Cal.App.3d 456 [102 Cal.Rptr. 11]; *Rosecrans* v. *United States* (5th Cir. 1967) 378 F.2d 561; *Com.* v. *Byrd* (1980) 490 Pa. 544 [417 A.2d 173, 19 A.L.R.4th 179]; *Gardner* v. *State* (1979) 286 Md. 520 [408 A.2d 1317]; *Platt* v. *State* (1943) 143 Neb. 131 [8 N.W.2d 849].)

Thus, in *People* v. *Holzer, supra,* 25 Cal.App.3d 456, Holzer contended that his conviction for conspiracy to violate section 245 should be reversed because his alleged coconspirator was acquitted subsequently of the same charge. The court held: "Defendant's first contention on appeal is that his conviction for conspiracy must be reversed because the only other conspirator named in the indictment, Merrill Shapiro, was later acquitted. This argument derives from the rule that the crime of conspiracy necessarily requires the participation of at least two people, and where the guilt of only one is shown, the crime is incomplete. (*People* v. *Reeves,* 250 Cal.App.2d 490, 492 [58 Cal.Rptr. 517]; *People* v. *James,* 189 Cal.App.2d 14, 15-16 [10 Cal.Rptr. 809, 91 A.L.R.2d 697].) This rule is a logical imperative where all conspirators are tried together. Where separate trials are had this reasoning loses its force.

"If a single jury trying X and Y for conspiracy were to find that X conspired with Y, but that Y did not conspire with X, the verdict could not stand. (See *Lubin* v. *United States,* 313 F.2d 419, 423; *People* v. *Reeves, supra,* 250 Cal.App.2d 490, 492.) But a jury trying X alone, can find that X and Y were co-conspirators and can properly convict X. (*People* v. *Sagehorn,* 140 Cal.App.2d 138, 146 [294 P.2d 1062]; *United States* v. *Koritan,* 182 F.Supp. 143, 145, affd. 283 F.2d 516.) The fact that Y is later acquitted of conspiring with X by a different jury on a different presentation of evidence, cannot affect the validity of the first conviction. (See 91 A.L.R.2d 704; 16 Am.Jur.2d, Conspiracy, § 33, pp. 144-145.)" (*People* v. *Holzer, supra,* 25 Cal.App.3d at pp. 459-460.)

In *United States* v. *Espinosa-Cerpa* (5th Cir. 1980) 630 F.2d 328, the court, on facts similar to those in the case at hand, held that the rule of consistency of verdicts would not preclude the defendant's conviction of conspiracy even though all of his alleged coconspirators had been *previously* acquitted in a separate trial. The court pointed out that different evidence might have been presented in the two trials or that the two juries, quite reasonably, might have taken different views of the same evidence.

In *People* v. *Superior Court (Jackson)* (1975) 44 Cal.App.3d 494 [118 Cal.Rptr. 702], Jackson, Jones and Finch were charged with conspiracy to commit robbery. Jones and Finch were tried and acquitted of the crime charged. The court, although agreeing that "the consistency rule has no applicability to the situation in which coconspirators' trials are severed," (*id.*, at p. 500), nevertheless, held that collateral estoppel precluded Jackson's prosecution for conspiracy to commit robbery. The court reasoned that, by definition, a conspiracy is an agreement and requires the concurrence of at least two parties. (*Id.*, at p. 498.) Jackson, by definition, could not have committed the conspiracy unless he engaged in a conspiracy with Jones and Finch. Jackson could not have committed a criminal conspiracy alone. Since the state already had failed to establish Jones and Finch conspired with Jackson to commit a robbery, the prosecution was precluded by collateral estoppel from charging Jackson with conspiracy to commit robbery. (*Id.*, at pp. 500-503.)

In addition to *Jackson,* defendant principally relies on *People* v. *Taylor* (1974) 12 Cal.3d 686 [117 Cal.Rptr. 70, 527 P.2d 622] to support his contention that collateral estoppel precludes his conviction for conspiracy to commit murder. In that case, Taylor and two other men, Daniels and Smith, planned to rob a liquor store. Taylor remained in the car and was the getaway man. Daniels and Smith entered the store, and when they tried to rob the victim owners at gunpoint, one of the victims shot and killed Smith. Daniels fled from the scene. Taylor was convicted of first degree murder of Smith and robbery of the store owners. Previously, Daniels had been tried separately and convicted of robbery but acquitted of murder.

The Supreme Court held Taylor, as the getaway man, could only be guilty of murdering Smith if, on the theory of vicarious liability, it appeared that Smith and Daniels harbored malice aforethought in robbing the store. It further found the People had failed to establish at Daniels's trial that either Daniels or Smith entertained malice aforethought. The Supreme Court held the People were collaterally estopped from relitigating the issue of Daniels's or Smith's state of mind in Taylor's trial. However, the Supreme Court specifically limited its holding "to the particular circumstances of the instant case where an accused's guilt must be predicated on his vicarious liability for the acts of a previously acquited [*sic*] confederate." (*People* v. *Taylor, supra,* 12 Cal.3d at p. 698.)

The guilt of a conspirator is not predicated upon vicarious liability, but rather upon "interdependent or joint responsibility." (*People* v. *Superior Court (Jackson), supra,* 44 Cal.App.3d at p. 502.) *Taylor,* therefore, does not compel application of collateral estoppel to coconspirators who are tried separately.

Furthermore, both *People* v. *Taylor* and *People* v. *Superior Court (Jackson)* are distinguishable from the case at bench. The *Taylor* court addressed the issue whether collateral estoppel should be allowed on behalf of a criminal defendant who was not involved in the prior trial. (*People* v. *Taylor, supra,* 12 Cal.3d at p. 692.) ▮ The Supreme Court stated the purposes behind the collateral estoppel doctrine are to promote judicial economy by minimizing repetitive litigation, to prevent inconsistent judgments that undermine the integrity of the judicial system, and to prevent a person from being harassed by vexatious litigation. (*Id.,* at p. 695.) It further held the policy considerations in that case favored application of the doctrine of collateral estoppel. The *Taylor* court also recognized the following reasons that might weigh against the application of the doctrine of collateral estoppel when the defendant was not a party to the prior trial: the difficulty of identifying the issues resolved against the People in the prior trial, the unfairness of binding the state when the defendant is not bound by the first trial, and the undesirability of multiplying the results of a possibly erroneous verdict of acquittal. (*Id.,* at p. 696.)

Pursuant to these reasons, the People argued in *Taylor* that the inconsistency in the results of Taylor's trial and Daniels's trial could be explained by differences in evidence and jury instructions, and that the application of collateral estoppel might result in spreading the effects of a possibly erroneous acquittal. The *Taylor* court, however, had before it the evidence presented in the Daniels trial. It held that the evidence in both trials and the jury instructions given were significantly identical. Hence, the inconsistencies could not be explained by such differences in evidence or jury instructions. (*People* v. *Taylor, supra,* 12 Cal.3d at p. 698.) As noted by the court in a footnote, it specifically did not address the issue of whether collateral estoppel would apply where the People discovered new evidence after the first trial. (*Id.,* at p. 698, fn. 16.)

The appellate court's decision in *People* v. *Superior Court (Jackson)* was based on a similar rationale. In discussing the *Taylor* opinion, the *Jackson* court noted the *Taylor* court had found when the same set of operative facts are presented at the first trial of a perpetrator, collateral estoppel would bar the retrial of the identical factual issues at a subsequent trial of a second defendant. In this situation, justice would be served, and there would be no concern for compounding the results of an erroneous acquittal. The *Jackson* court concluded, "Since the same facts offered to prove the conspiracy at the Jones-Finch trial will be offered at Jackson's trial, reason dictates that collateral estoppel be applied in this case." (*People* v. *Superior Court (Jackson), supra,* 44 Cal.App.3d at p. 502.)

▮ In the present case, however, the record does not disclose that the evidence introduced in defendant's trial was identical to the evidence in-

troduced in the trials of Medina and Johnson. On the contrary, the record shows that at least in Jo Ann Johnson's case, the evidence presented to the jury was different, since it appears that she testified on her own behalf. The fact that the informations all alleged the same overt acts does not compel the conclusion that the evidence in the separate trials was identical. The question, therefore, is still open whether collateral estoppel would preclude the conviction of conspiracy to commit murder where in previous separate trials the juries acquitted the alleged coconspirators of this specific charge.

■ This court recognized in *Sandoval* v. *Superior Court* (1983) 140 Cal.App.3d 932, 941 [190 Cal.Rptr. 29], that "Collateral estoppel is an equitable concept based on fundamental principles of fairness. For issue preclusion purposes it means that a party ordinarily may not relitigate an issue that was fully and fairly litigated on a previous occasion." Furthermore, as noted in *People* v. *Taylor,* collateral estoppel is only applicable where the issue necessarily decided at the previous trial is identical to the one which is sought to be relitigated. (*People* v. *Taylor, supra,* 12 Cal.3d at p. 691.) ■ Without knowing what evidence was presented to the juries in the trials of Medina and Johnson, it is impossible to determine which factual issues were presented to the juries and necessarily decided by them. With this basic requirement missing, the doctrine of collateral estoppel should not be applicable. (*People* v. *Mata* (1978) 85 Cal.App.3d 233, 239-240 [149 Cal.Rptr. 327] [conc. opn. of Andreen, J.]; cf. *People* v. *Taylor, supra,* 12 Cal.3d at p. 698; *People* v. *Superior Court (Jackson), supra,* 44 Cal.App.3d at p. 502.)

Additionally, two of the three policies that would favor the application of the doctrine of collateral estoppel are not present in this case. These policies favoring collateral estoppel are (1) the promotion of judicial economy, (2) prevention of inconsistent judgments and (3) prevention of vexatious litigation. (*People* v. *Taylor, supra,* 12 Cal.3d at p. 695.) Since defendant has been tried only once on the conspiracy charge, he has not been harassed by vexatious litigation (see *id.,* at p. 696); hence, the third policy underlying collateral estoppel is missing. More importantly, this case does not involve a situation in which the integrity of the judicial system is threatened by inconsistent judgments. First, the mere fact that inconsistent verdicts have been reached between defendants in several trials, between defendants in the same trial, or as to one defendant between several counts charged in a single trial, does not undermine the integrity of the judicial system. Inconsistencies may be explained rationally and compellingly by referring to a jury's inherent power to be lenient with a particular defendant or by recognizing that evidence as to all defendants is not necessarily precisely the same. In the present case, the inconsistency in the verdicts between defendant and his coconspirators may be explained by recognizing the definite pos-

sibility that different evidence was presented in the trials. The inconsistency is not irrational, and it should not be deemed to undermine the judicial integrity. Furthermore, the evidence presented in defendant's trial contains not even a scintilla of evidence that this murder was brought about through heat of passion. Consequently, the prior convictions of Johnson and Medina could be entirely erroneous, and there is present in this case the danger that erroneous verdicts of acquittal will be multiplied. Inconsistent verdicts, therefore, would not undermine the integrity of the judicial system.

Similar principles have been applied by the United States Supreme Court to deny application of the doctrine of collateral estoppel in a trial of a person convicted as an aider and abettor. In *Standefer* v. *United States,* petitioner was indicted on five counts of aiding and abetting a revenue official in accepting compensation in addition to that authorized by law, in violation of federal statute. The named principal in petitioner's case had been acquitted of accepting unlawful compensation. Petitioner moved to dismiss the federal statute violations on the grounds that since the principal had been acquitted of accepting unlawful compensation, petitioner could not be convicted of aiding and abetting an offense of accepting unlawful compensation. The motion was denied, and petitioner ultimately was found guilty. (*Standefer* v. *United States* (1980) 447 U.S. 10, 11-14 [64 L.Ed.2d 689, 692-694, 100 S.Ct. 1999].)

The Supreme Court discussed the issue whether collateral estoppel barred the government from prosecuting petitioner as an aider and abettor, when the alleged perpetrator had been acquitted of the underlying offense. The court first noted that the government in a criminal case, unlike a party in a civil case, is often without the kind of "full and fair opportunity to litigate" upon which collateral estoppel is based. For example, it noted the prosecution's discovery rights were limited by rules of court and constitutional privilege, the government was not able to obtain a judgment notwithstanding the verdict despite the clear abundance of evidence in support of guilt, and the prosecution could not secure a new trial on the ground that an acquittal was plainly contrary to the weight of the evidence. Furthermore, the Supreme Court noted that a jury could acquit out of compassion or compromise or because of """"their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.""""" (*Standefer* v. *United States, supra,* 447 U.S. at p. 22 [64 L.Ed.2d at p. 699].) The prosecution has no avenue to correct such errors. This factor weighed heavily against giving an acquittal preclusive effect under collateral estoppel.

The *Standefer* court also reasoned that rules of evidence could preclude the prosecution from presenting all the evidence that it had in a particular case against a particular defendant. These rules of evidence might not be

determined in the same manner as to other defendants. The court stated, "In such circumstances, where evidentiary rules prevent the Government from presenting all its proof in the first case, application of nonmutual estoppel would be plainly unwarranted." (*Standefer* v. *United States, supra,* 447 U.S. at p. 24 [64 L.Ed.2d at p. 700].)

Finally, the Supreme Court noted that in a criminal case, unlike a civil case, the purpose is not to ascertain private rights but to enforce the criminal laws. The prosecution, therefore, should not be bound as a general matter by a rule that could promote the duplication of an erroneous acquittal to all persons who participate in a criminal transaction. These competing policy considerations outweighed any economy concerns upon which collateral estoppel was based. (*Standefer* v. *United States, supra,* 447 U.S. at pp. 24-25 [64 L.Ed.2d at pp. 700-701].)

The argument made by petitioner in *Standefer* is analogous to the argument made by defendant in the present case. Petitioner in *Standefer* was charged only as an aider and abettor to an offense perpetrated by a revenue official. If it were absolutely established that there was no perpetrator and no underlying offense committed, logically, it would be legally impossible for petitioner to be an aider and abettor. The same logic of legal impossibility is presented in defendant's case wherein he argues his conviction of conspiracy to commit murder is legally impossible, since all of the alleged coconspirators were acquitted. The considerations cited in the *Standefer* court rejecting the application of collateral estoppel are all present in the case at bench. By parity of reasoning, collateral estoppel should not be applied in this case. The *Standefer* opinion may not be argued to be inapplicable because it deals with federal criminal law. ■ The principles articulated in federal courts concerning the doctrine of collateral estoppel are equally pertinent to state court matters. (*Sandoval* v. *Superior Court, supra,* 140 Cal.App.3d at p. 944.)

Federal courts have ruled the principles announced in *Standefer* v. *United States* are applicable to multiple conspiracy actions. In *United States* v. *Espinosa-Cerpa,* defendant was convicted of conspiracy to import marijuana. In a separate trial of all his named alleged coconspirators, the coconspirators were acquitted of conspiracy. Relying on *Standefer* v. *United States,* the *Espinosa-Cerpa* court determined that collateral estoppel was not available to defendant to preclude his conviction of conspiracy. The court also refuted defendant's argument that the rule, wherein a single conspirator may not be convicted in the same proceeding or prosecution in which all of the alleged coconspirators are acquitted, should be extended to the situation in which conspirators are tried in separate trials. It held the extension of this rule would ignore the fact that different evidence might

have been presented in the two proceedings, or that the separate juries reasonably might have taken different views of the same evidence. It also held that an extension of the rule would be inconsistent with the Supreme Court's decision in *Standefer* v. *United States.* (*United States* v. *Espinosa-Cerpa, supra,* 630 F.2d 328, 330-333.)

Neither *Taylor* nor *Jackson* compel the conclusion that when coconspirators are tried separately and all but one is acquitted, the convicted conspirator may use the doctrine of collateral estoppel successfully to bar his conviction. When the convicted conspirator is tried separately from his acquitted alleged coconspirators, and the record does not indicate that the evidence introduced in all trials was identical, application of the doctrine of collateral estoppel is unwarranted.

Finally, we note in the present case, defendant's confederates were not acquitted of engaging in a criminal conspiracy. Each was found guilty of conspiracy to commit voluntary manslaughter, a lesser included offense of the crime of conspiracy to commit murder. Thus, defendant and all of his named coconspirators were found guilty of conspiracy to commit a homicide. Even assuming that substantially the same evidence was presented, that Mrs. Johnson and Medina were convicted of conspiring to commit a lesser degree of homicide could easily be explained by the evidence that defendant was the actual killer and extension of leniency by the separate juries trying Mrs. Johnson and Medina.

B. *Collateral estoppel as applied to defendant's conviction for murder.*

The question remaining is whether collateral estoppel would preclude defendant's conviction of murder. Defendant contends the prosecution should have been barred from relitigating the issues of malice and defendant's motive of killing for financial gain.

Defendant argues that since the jury found he did not personally use a firearm within the meaning of section 12022.5, he was not found to be the direct perpetrator of the murder. Hence, he was only an aider and abettor to Medina, and if defendant possessed malice, it could only be on the theory that Medina harbored malice aforethought at the time he shot Dwayne Johnson. Furthermore, defendant could not have harbored malice because Medina's state of mind had been litigated previously, and the jury found Medina entertained no malice.

Defendant's argument is based on the assumption that the jury necessarily found he was an aider and abettor and not a direct perpetrator. This assumption, however, is speculative. A jury's finding on an alleged enhance-

ment that an accused was not armed with a firearm or did not personally use a firearm does not necessarily mean that the accused was not a direct perpetrator of the crime.

In *People* v. *Lopez* (1982) 131 Cal.App.3d 565 [182 Cal.Rptr.], Lopez and three other men were charged with assault with a deadly weapon and personally using a firearm pursuant to section 12022.5. The charges stemmed from an incident in which the defendant and the other men were responsible for shooting a rifle at a group of people in the park. The majority of the evidence indicated that Lopez fired the rifle. Lopez ultimately was convicted of six counts of assault with a deadly weapon, but the jury found he did not personally use a firearm in committing the offense.

Lopez argued the evidence was insufficient to support findings that he aided and abetted an assault with a deadly weapon. He contended the court could not analyze the evidence for sufficiency under the theory that he was the direct perpetrator because the jury found he did not personally use a firearm. As the appellate court phrased Lopez's argument, "he claims, the negative finding on the enhancement allegation is equivalent to a special verdict on the factual question of whether he personally used a firearm." (*People* v. *Lopez, supra,* 131 Cal.App.3d at p. 569.)

■ The *Lopez* court determined, however, it was not bound by Lopez's theory in examining the sufficiency of the evidence. The court first noted that a jury may make inconsistent findings or verdicts as to a defendant charged with two offenses. An acquittal on one offense will not invalidate a verdict on a second offense, although the two verdicts are factually inconsistent. (*People* v. *Lopez, supra,* 131 Cal.App.3d at p. 570.) This rule is based on the realization that inconsistent findings may be caused simply by the mercy or leniency of the jury. (*Id.,* at p. 571.) The *Lopez* court found that this rule also should be applicable when the inconsistency exists between a verdict on an offense and a finding on an enhancement. It finally held the evidence was sufficient to support a jury verdict that defendant had fired a rifle at a group of people and was guilty of assault with a deadly weapon. (*Id.,* at pp. 570-572; see also *People* v. *Federico* (1981) 127 Cal.App.3d 20, 31-33 [179 Cal.Rptr. 315].)

In the case at bar, the jury's negative finding on the personal use of firearm enhancement does not compel the conclusion that it did not find defendant to be the actual perpetrator in shooting Dwayne Johnson. The evidence was sufficient to establish that he shot Johnson several times before rolling Johnson's body off a cliff. As the actual perpetrator, defendant's liability, or the presence of malice aforethought, is not dependent in any way on Medina's liability or state of mind. Therefore, it would not appear that the

issue litigated and determined in Medina's case was identical to the issue presented in defendant's case. The doctrine of collateral estoppel does not apply. (See *People* v. *Taylor, supra,* 12 Cal.3d at p. 691.)

■ Defendant's contention also is based on the premise that Medina was the direct perpetrator, and the jury necessarily found Medina, as the direct perpetrator, was not responsible for committing the crime of murder with malice aforethought. This conclusion may not be reached, however, solely on the information and verdicts from Medina's trial. On this record, it is impossible to determine that Medina was prosecuted solely as the direct perpetrator. It may be that Medina was prosecuted as an aider and abettor. In fact, Medina's verdict of guilty of voluntary manslaughter and the finding that he did not personally use a firearm might be consistent with a finding that he was an aider and abettor, to use defendant's logic. Hence, we cannot say the previous jury necessarily determined the only principal between the two men did not harbor malice. This issue not being decided adversely to the prosecution, collateral estoppel would not bar defendant's conviction of the crime of murder on the theory that he was either the direct perpetrator or guilty as an aider and abettor.

Defendant also argues the prosecutor should have been precluded from litigating whether defendant killed Johnson for financial gain. Again, he argues that any motive he had of killing for financial gain had to be imputed to him from Jo Ann Johnson or Manuel Medina. He points out that in Jo Ann Johnson's trial, it was determined by the jury that the special circumstance alleging the murder was intentional and carried out for financial gain was untrue.

Defendant's motive in killing Johnson, however, need not have been imputed to him from either Johnson or Medina. Jo Ann Johnson's motive for wishing her husband dead, if present, was to collect life insurance proceeds from the policy on her husband. Defendant's motive to kill for money was not based on collecting insurance proceeds from a policy but was based on receiving money directly from Mrs. Johnson for killing her husband. Defendant expected one-half of $5,000 for doing this job. He and Medina received $1,500 on the night of the killing and expected the rest from Jo Ann Johnson when she collected money from her policy. Defendant had his own independent motive and source for collecting money from this murder. His desire for money is not based on Mrs. Johnson's desire for money at all. Since defendant's motive of killing for money was not necessarily imputed from Mrs. Johnson's motive, *People* v. *Taylor* would be inapplicable. Furthermore, it was not legally impossible for defendant to desire money for the killing if Jo Ann Johnson and Manuel Medina did not desire any money. Therefore, the analysis in *People* v. *Superior Court*

*(Jackson)* also would not be applicable. Collateral estoppel would not stop the prosecutor from litigating the issue of defendant's motive for killing Dwayne Johnson.

## II-VII*

. . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Franson, Acting P. J., and Hoover, J.,† concurred.

Appellant's petition for review by the Supreme Court was denied October 16, 1986.

---

*See footnote on page 214, *ante.*
†Assigned by the Chairperson of the Judicial Council.