[Crim. No. 13254. Fourth Dist., Div. One. May 7, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
RAYMOND LOPEZ, Defendant and Appellant.

COUNSEL

Christopher Blake, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Jay Bloom and Rudolf Corona, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

WIENER, J.—Raymond Lopez (Raymond) appeals the judgment entered after a jury convicted him of six counts of assault with a deadly weapon (Pen. Code, § 245, subd. (a)).[1]

I

About noon on November 27, 1980, people began congregating at Guadalupe Park in Brawley for a picnic and for the traditional Thanksgiving Day football game. Raymond drove by the park in his green Chevrolet Caprice; his brother Ralph drove by in a mustard-colored Datsun pickup truck. Shortly after the game ended, Raymond parked his car in the middle of Malan Street and got out of the car carrying a .22 rifle. He walked towards a group of young men standing near a red Pinto and began firing. Several people were injured. At the time of the shooting, Ralph's truck was parked near the green Chevrolet. Witnesses

---

[1] All statutory references are to the Penal Code unless otherwise specified.

saw smoke coming from the truck's passenger compartment. The Salazar brothers drove slowly by in a brown LTD past the truck and Chevrolet before making a U-turn. George Salazar, the passenger in the LTD, pointed a silver-colored metal object five to six inches long out the window shortly before the shooting started. A witness testified she thought the object was a gun.

The Imperial County Grand Jury indicted Raymond, Ralph, Adrian Salazar and his brother George for assault with a deadly weapon and alleged each personally used a firearm under section 12022.5. After a postindictment hearing, the defendants were bound over for trial. The Salazar brothers pleaded guilty to misdemeanors.

At the completion of the People's case, the prosecution filed an amended information charging six counts of assault with a deadly weapon and alleging use of a weapon in commission of each count. The court directed a verdict in favor of Ralph at the conclusion of all the evidence. The jury found Raymond guilty on each count of assault with a deadly weapon, but found he did not personally use a firearm in committing the offenses. He was sentenced to prison for the upper term of four years on all counts with execution on counts two through six stayed, the stay to become permanent upon the completion of his sentence on count one.

## II

Raymond contends there is insufficient evidence to support the verdicts. Essential to this argument, however, is his theory that our examination of the verdicts may not be made on the basis that he was convicted as a principal, but only as an aider and abettor. He explains that our judicial perspective must be limited by the jury's inconsistency in finding him guilty of the offense of assault with a deadly weapon, but finding he was not personally armed with a weapon. In effect, he claims, the negative finding on the enhancement allegation is equivalent to a special verdict on the factual question of whether he personally used a firearm. Thus, before we reach the sufficiency of the evidence argument, we must resolve the threshold question which he presents. What is the legal effect of the inconsistency between the verdict on each of the offenses and the findings on the enhancements?

We have deliberately phrased this preliminary question to stress we are not faced here with the inconsistency of verdicts on *offenses* covered

by section 954. That section, amended in 1927, added the following provisions for the purpose of nullifying the invalid inconsistent verdict rule of *People* v. *Andursky* (1925) 75 Cal.App. 16 [241 P. 591] and similar cases: "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts .... An acquittal of one or more counts shall not be deemed an acquittal of any other count." After the effective date of the amendment, the result was "that any verdict of guilty which is sufficiently certain is a valid verdict even though the jury's action in returning it was, in a legal sense, inconsistent with its action in returning another verdict of acquittal or guilt of a different offense." (Witkin, Cal. Criminal Procedure, § 549, p. 560.)

For example, in *People* v. *Codina* (1947) 30 Cal.2d 356 [181 P.2d 881], the jury acquitted defendant on the charge of lewd and lascivious conduct but convicted him of contributing to the delinquency of a minor. The conviction was upheld even though both counts were based on the same act.

In *People* v. *Gottman* (1976) 64 Cal.App.3d 775 [134 Cal.Rptr. 834], the court affirmed a conviction of rape by threats of great bodily harm although the jury found, in conjunction with a charge of oral copulation, defendant did not use force, violence, duress, menace and threat of great bodily harm. According to the court, the only reasonable conclusion to be drawn from the evidence was that if defendant committed the two crimes, he committed each by threat of great bodily harm.

Finally, in *People* v. *Ranney* (1932) 123 Cal.App. 403 [11 P.2d 405], the court rejected defendant's contention that jury verdicts convicting him of two counts of grand theft were void because he was acquitted of five similar counts of grand theft. The court, stating section 954 settled the question of the effect of inconsistent verdicts, held the only issue was whether sufficient evidence sustained the guilty verdicts. (*Id.*, at pp. 406-407.)

■ Here, although the amended information alleges "enhancement" rather than an "offense" (see *People* v. *Boerner* (1981) 120 Cal.App.3d 506, 511 [174 Cal.Rptr. 629]), the degree of factual inconsistency is no greater, or no less, than in the cases discussed above. We believe the policy underlying the statute is equally applicable to the case before us

in the same manner as it would have been if Raymond had been charged with separate offenses and the jury had returned inconsistent verdicts on those offenses. In *People* v. *Amick* (1942) 20 Cal.2d 247 [125 P.2d 25], our Supreme Court explained, """[W]e find more persuasive cases recognizing that such inconsistent verdicts may be caused not by the confusion but the mercy of the jury, of which the appellant can neither complain nor gain further advantage. (Citing cases.) Moreover, probably to avoid the result of those cases which interpret inconsistent verdicts as acts of stupidity rather than acts of leniency, section 954 of the Penal Code was amended in 1927 ...." "We [therefore] conclude that even if the dismissal be regarded as an acquittal, that is no reason why the judgment of conviction, based on ample evidence, should be reversed.""" (20 Cal.2d at p. 252, quoting from *People* v. *Horowitz* (1933) 131 Cal.App.Supp. 791, 793-794 [19 P.2d 874].)

The concept of jury largesse is not governed by the legislative choice of language. The fact that the word "enhancement" is used rather than "offense" does not nullify the underlying rationale of refusing to invalidate an inconsistent jury verdict if it is otherwise supported by substantial evidence. In so holding, we are in line with most authorities who even absent statutory authorization have upheld convictions on some counts irrespective of their rational incompatibility with acquittal on other counts. (See *Dunn* v. *United States* (1932) 284 U.S. 390 [76 L.Ed. 356, 52 S.Ct. 189, 80 A.L.R. 161] and cases cited in 18 A.L.R.3d 259, Criminal Verdict—Inconsistency, § 3, pp. 274-281; accord *People* v. *Federico* (1981) 127 Cal.App.3d 20, 32-33 [179 Cal.Rptr. 315].) Accordingly, we are not limited to Raymond's proffered theory in our examination of the sufficiency of the evidence.

■ When we review the evidence we will do so in the light most favorable to the judgment to determine whether substantial evidence supports the conclusion of the trier of fact. (*People* v. *Hicks* (1982) 128 Cal.App.3d 423, 429 [180 Cal.Rptr. 391].) We recognize it is exclusively the province of the jury to judge the credibility of witnesses and to decide how much weight testimony should be given.

## III

In light of Raymond's trial testimony that he owned a .22 rifle and was present when the shooting occurred, the crucial issue before the jury was whether he was the one who fired the shots.

Henry Cota testified he saw Raymond park in the middle of the road and get out of the car firing a rifle. Cota thought Raymond rapidly fired eight to ten shots in a northwesterly direction. Cota had known Raymond for 10 years and had gone to school with him.

Cynthia Duarte testified she heard shots while facing her house across the street from the park. When she turned around she saw what she believed to be a green Impala. Raymond was outside the car holding what looked like a gun or rifle and moving toward the red Pinto. She heard shooting noises coming from Raymond's general direction. The shooting lasted a minute or two. Duarte also went to school with Raymond and had known him since they both were children.

Debbie Aguayo saw people arguing near the red Pinto and then heard shots. She saw Raymond get out of the Chevrolet with a "rifle-type" gun in his hand and go over to the red Pinto. Aguayo did not hear any shots until Raymond pointed his gun toward the Pinto. Six to eight people ran away from the Pinto while the shots were being fired. Three or four others got down on the ground behind the Pinto. "A lot" of people fell. Debbie heard from 10 to 18 shots fired after the first one. The shooting stopped when Raymond fell backwards. He was shot in the left wrist. She also went to school with Raymond.

When Jacinto Cota heard a shot, he turned to the area where the red Pinto was parked. There he saw a mustard-colored pickup truck, a brown Ford LTD and a green Impala. He watched Raymond get out of the green car while holding a rifle pointed toward the red car. Cota saw no one else with a gun. Raymond walked around the driver's side of the Pinto to the passenger side.

■ The testimony of these four witnesses coupled with Raymond's admission he was at the scene constitute sufficient evidence to support a finding he committed the assaults.

IV

At sentencing, the court stated it would impose sentence for the upper base term based on these circumstances in aggravation: (1) the crime involved infliction of great bodily injury, (2) defendant was armed with a firearm, and (3) there were multiple victims. Raymond challenges the court's reliance on these factors.

■ In order to sustain a finding of great bodily injury "there must be evidence of injury substantially *beyond* that necessarily present in the commission of [the crime]." (Italics in original.) (*People v. Caudillo* (1978) 21 Cal.3d 562, 587 [146 Cal.Rptr. 859, 580 P.2d 274].) The court contrasted injuries which are significant, substantial or visually disfiguring with injuries which are transitory, trivial, insignificant or moderate. (*Id.*, at p. 588.) In applying the *Caudillo* standard, *People v. Johnson* (1980) 104 Cal.App.3d 598 [164 Cal.Rptr. 69] held a fractured jaw was a "significant and substantial physical injury" because the injury "causes significant pain and requires considerable time to heal." (At p. 609.)

Here the record contains evidence each of the six victims named in the amended information received gunshot wounds. Several other persons testified they were shot.[2] Many of the victims were treated at the hospital. We conclude the record contains ample evidence of injury substantially beyond the amount and severity of injury necessarily present when a defendant commits assault with a deadly weapon. Physical injury to the victim is not a necessary element of the crime.

Raymond also claims the court erred in considering the fact the crime involved great bodily harm as a circumstance in aggravation because the court failed to specify which victims it found had suffered great bodily harm. He says that because *People v. McNeill* (1980) 112 Cal.App.3d 330 [169 Cal.Rptr. 313] requires the court to instruct the jury it must agree on the particular act defendant committed in cases involving multiple offenses charged as a single count, the court must similarly specify which victims suffered great bodily harm if this factor is considered in selecting the upper term.

■ *McNeill* is inapplicable here. Its holding speaks to the problem arising in jury trials involving the possibility an individual juror might decide the defendant was guilty because he believed defendant committed one of the acts charged in a single count, while other jurors might base their guilty verdict on the belief defendant committed another act. Here, the court alone determined whether the crime involved great bodily harm. No problem of lack of unanimity arises.

---

[2] Juan Ledezma was hit five times—twice in the stomach, twice in the leg and once in the lungs. Tony Escalera was hit five times in the left leg. Tony Arriaga was hit in the arm. Jose Ledezma was shot in the foot. Jaime Placencia was shot in the leg. Ramiro Rodriguez was shot four times in the leg and once in the arm. Joe Soto, a bystander, was shot in the waist. Carlos Villalon was shot in the thigh. The bullet was still in his leg at the time of trial.

■■■■■■

■ We reject Raymond's contention the trial court erred in considering the fact he was armed with a firearm as a circumstance in aggravation because the jury found he did not use a firearm in committing the crime. However, here the jury was never asked to make a finding whether he was armed within the meaning of section 12022, subdivision (a). Under rule 421 [California Rules of Court] the court was authorized to consider the fact Raymond was armed with a weapon "whether or not charged or chargeable as an enhancement." (See Cal. Rules of Court, rule 421(a)(2).)

■ Raymond's argument the court failed to consider various mitigating factors is without merit. The court considered defendant's age, the fact the anomalous jury verdict may have resulted in conviction of aiding and abetting, and acknowledged other persons involved in the incident were firing weapons. The court expressly rejected the argument Raymond was in some respects a victim rather than a perpetrator. Obviously the court considered and then rejected the factors defense counsel contended were mitigating circumstances. (*People v. Boerner, supra,* 120 Cal.App.3d 506, 510, fn. 4.) The court is not required to indicate why it is rejecting a mitigating factor. (*People v. Davis* (1980) 103 Cal.App.3d 270, 281 [163 Cal.Rptr. 22].)

*Disposition*

Judgment affirmed.

Cologne, Acting P. J., and Work, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 14, 1982. Kaus, J., did not participate therein.