Filed 5/19/15  In re Brian S. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Brian S., a Person Coming Under the Juvenile Court Law. | B255270 (Los Angeles County Super. Ct. No. MJ22547) |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>BRIAN S.,<br><br>        Defendant and Appellant. | |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Denise McLaughlin-Bennett, Judge.  Reversed and remanded with directions.

        Mary Bernstein, under appointment by the Court of Appeal, for Defendant and Appellant.

        Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Analee J. Brodie, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

The juvenile court sustained a petition filed under Welfare and Institutions Code section 602, alleging one count of assault with a deadly weapon against the minor Brian S. The minor appeals, contending there was insufficient evidence he aided and abetted the crime, which was the theory underlying the court's judgment. Because we find that the court erred by relying on a factually inadequate theory of aiding and abetting and the error was not harmless, we reverse the judgment and remand with the direction to reduce count 1 to simple assault.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.      Factual background.

On February 21, 2014, Jesse O'Rourke had a barbeque at his home.[1] Brian (the minor) and his brother, Joseph, were present. An argument between "David" and "Andrew" caused O'Rourke's wife to ask Andrew, Brian, and Joseph to leave. To make sure they left, O'Rourke followed them outside.[2] Brian, Joseph, and Andrew were in the driveway, talking. When O'Rourke spoke to Andrew about what had happened, Brian got "lippy," saying he didn't have to listen to O'Rourke. O'Rourke told Brian to " 'have a little respect and leave.' "

Joseph pulled O'Rourke to the ground and kicked him. Brian "straddled" O'Rourke, as Joseph continued to kick O'Rourke.[3] O'Rourke did not know what Andrew was doing. O'Rourke was stabbed once. He did not see a knife or who stabbed him, but he told people that Brian stabbed him.

Gregory Jordan was present that night. He ran outside after hearing that O'Rourke was "getting jumped." He saw Joseph kicking O'Rourke. Brian was hunched over

---

[1]      O'Rourke was "buzzed," having drunk four "jager bombs."

[2]      "Josh" also left, but he went straight to the car.

[3]      O'Rourke also said that Brian "was kneeled on one knee kind of his whole body. His legs weren't over the top of me, just his – his arms."

O'Rourke's "middle hip area." Andrew was also hunched over O'Rourke, and Andrew was throwing punches downward. As soon as Jordan ran out, the boys "scattered." Jordan chased Brian, who said "it wasn't him," he wouldn't "stab a brother."

Ahron Rodriguez arrived at O'Rourke's about noon. Brian and Joseph arrived "way later." Rodriguez saw "parts" of the argument between Andrew and David.[4] Rodriguez did not think that Brian and Joseph were present during the argument. After the argument, Andrew left, but he came back with Brian and Joseph.[5] When someone called out that O'Rourke was getting jumped, Rodriguez ran outside and saw Joseph kicking O'Rourke and Brian hunched over O'Rourke's chest. Andrew was "next to [O'Rourke's] legs."

## II.     Procedural background.

On February 25, 2014, a petition under Welfare and Institutions Code section 602 was filed against Brian alleging count 1, assault with a deadly weapon, a knife (Pen. Code, § 245, subd. (a)(1)).[6] The petition also alleged that Brian personally inflicted great bodily injury (Pen. Code, § 12022.7, subd. (a)).

An adjudication hearing was conducted. After hearing the evidence, the juvenile court said it believed that the "minors were acting in concert with Andrew who did not intend to come back to have a good time but intended to come back to re-address the reason why he was asked to leave in the first place." The court found "on point"

---

[4]     Rodriguez thought that Andrew and David argued about a bottle of vodka.

[5]     Rodriguez's testimony is unclear. After saying that he didn't think Brian and Joseph were present during the argument, Rodriguez was asked whether he saw them "inside the house at any point?" Rodriguez answered, "Yes, I did. I think Andrew had left and he came back with them." When Rodriguez was then asked if Brian and Joseph left with Andrew, Rodriguez answered, "They were all outside and [O'Rourke] was outside telling them to leave."

[6]     The parties ask us to take judicial notice of *In re Joseph S.* (Jan. 15, 2015, B256355) a nonpublished opinion, which concerns Brian's brother, who was also the subject of a petition under Welfare and Institutions Code section 602 arising out this incident. We take judicial notice of that case. (Evid. Code, § 452, subd. (a).)

3

*People v. Prettyman* (1996) 14 Cal.4th 248, concerning aider and abettor liability and the natural and probable consequences doctrine.[7] The court thought it "more reasonable to believe" that Andrew, not Brian, stabbed O'Rourke.

The juvenile court therefore, on March 27, 2014, found that Brian committed assault with a deadly weapon, but the court did not find true the personal infliction of great bodily injury allegation. The court declared Brian a ward of the court, removed him from his parents' custody, and placed him in Camp-Community Placement for six months. The court declared the offense to be a felony and set the maximum term of confinement at four years.

## DISCUSSION

Brian contends there was insufficient evidence he aided and abetted an assault with a deadly weapon under the natural and probable consequences doctrine; hence, the judgment must be reduced to a simple assault. The People appear to agree that the natural and probable consequences doctrine was an "inapplicable theory of culpability," but counter that Brian could be guilty of assault with a deadly weapon "as the person who wielded the knife" (i.e., the direct perpetrator) or as a direct aider and abettor. As we explain, we agree with Brian that the true finding on count for assault with a deadly weapon must be reduced to assault.

The prosecution theory below was that Brian stabbed O'Rourke (i.e., Brian was the direct perpetrator) or Brian aided and abetted the assault with a deadly weapon under the natural and probable consequences theory. Aiding and abetting—under either the natural and probable consequences doctrine or direct aiding and abetting—however, was an inapplicable theory, because there was insufficient evidence to support it. (See generally *People v. Prettyman, supra,* 14 Cal.4th at p. 262.)

The same standard governs review of the sufficiency of evidence in adult and in juvenile cases. (*In re Matthew A.* (2008) 165 Cal.App.4th 537, 540.) In assessing the

---

[7]     The prosecutor provided the court with "the natural and probable consequences jury instruction."

sufficiency of the evidence to support a conviction, "we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict. [Citation.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357; see also *Jackson v. Virginia* (1979) 443 U.S. 307; *People v. Snow* (2003) 30 Cal.4th 43, 66; *People v. Perez* (1992) 2 Cal.4th 1117, 1124.)

Direct aiding and abetting requires sufficient proof in three distinct areas: "(a) the direct perpetrator's actus reus—a crime committed by the direct perpetrator, (b) the aider and abettor's mens rea—knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving those unlawful ends, and (c) the aider and abettor's actus reus—conduct by the aider and abettor that in fact assists the achievement of the crime. [Citation.]" (*People v. Perez* (2005) 35 Cal.4th 1219, 1225; see also *People v. McCoy* (2001) 25 Cal.4th 1111, 1116-1117; *People v. Prettyman, supra,* 14 Cal.4th at p. 259; Pen. Code, § 31.) Here, there was no evidence Brian knew of the direct perpetrator's intent to commit an assault with a deadly weapon. None of the witnesses, including victim O'Rourke, saw a knife before or after the stabbing or heard anyone mention a

5

knife. Nothing in the circumstances leading up to the stabbing evidences Brian's knowledge of a knife or of the direct perpetrator's unlawful intent to use a knife. We know nothing about the weapon, except that O'Rourke was stabbed. The evidence was therefore insufficient to find that Brian directly aided and abetted an assault with a deadly weapon.

The evidence is similarly insufficient to support guilt under the alternative aiding and abetting theory. Under the natural and probable consequences doctrine, an aider and abettor is guilty not only of the intended crime (the target crime) but also of any other offense that was a "natural and probable consequence" of the target crime aided and abetted. (*People v. Prettyman, supra*, 14 Cal.4th at p. 254; *People v. Favor* (2012) 54 Cal.4th 868, 874; *People v. Medina* (2009) 46 Cal.4th 913, 920; *People v. McCoy, supra,* 25 Cal.4th at p. 1117.) The trier of fact "must find that the defendant, acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of a predicate or target offense; (3) by act or advice aided, promoted, encouraged or instigated the commission of the target crime[;] . . . (4) the defendant's confederate committed an offense *other than* the target crime; and (5) the offense committed by the confederate was a natural and probable consequence of the target crime that the defendant aided and abetted." (*Prettyman*, at p. 262, fn. omitted.)

Although the natural and probable consequences doctrine did not require Brian to know about the knife, it did require use of a knife to be a reasonably foreseeable consequence of the assault aided and abetted. (*People v. Medina, supra,* 46 Cal.4th at p. 920.) Courts have therefore found that use of a deadly weapon is a natural and probable consequence of an assault that occurs in a gang context. (See, e.g., *id.* at pp. 920-921 & cases cited therein & 924 ["in the gang context, it was not necessary for there to have been a prior discussion of or agreement to a shooting, or for a gang member to have known a fellow gang member was in fact armed"]; *People v. Montes* (1999) 74 Cal.App.4th 1050, 1056 ["Given the great potential for escalating violence during

6

gang confrontations, it is immaterial whether [defendant] specifically knew [the direct perpetrator] had a gun"]; *People v. Godinez* (1992) 2 Cal.App.4th 492, 499-500.)  In the gang context, that someone may use a weapon during an assault is therefore reasonably foreseeable.

This is not a gang case.  Unlike a gang case where evidence is usually introduced about, for example, gang violence, the notion of respect, gang rivalry, and backing up fellow gang members (see, e.g., *People v. Medina, supra,* 46 Cal.4th at p. 923), no analogous evidence was introduced here (see *People v. Butts* (1965) 236 Cal.App.2d 817, 837 [because the "evidence shows Butts' awareness of [a] participation in a fist fight, not a knife fight," there was insufficient evidence to base guilt for murder on aiding and abetting]).[8]  There was little evidence about the circumstances surrounding this event: Andrew and David argued; Brian and his brother were asked to leave with Andrew; and Brian got "lippy" with O'Rourke, apparently inciting Joseph to pull O'Rourke to the ground.  But no evidence was introduced, for example, to explain Brian's relationship to Andrew or why Brian and Joseph were asked to leave with Andrew.  There is no context analogous to a gang one from which a trier of fact could conclude that use of a weapon was a reasonably foreseeable consequence of the assault.

The People respond that it is unclear the juvenile court relied on an inapplicable aiding and abetting theory.  The court's comments and judgment, however, demonstrate otherwise.  The court found *Prettyman* "on point with respect to those issues that were raised during this adjudication, particularly wherein it states a person who aids and abets the commission of a crime is a principal in the crime and thus shares the guilt of the actual perpetrator.  And that an aider and abett[or] is guilty not only of the offense he intended to facilitate or encourage, but also of any reasonable foreseeable offense which

---

[8]    *People v. Montes*, *supra*, 74 Cal.App.4th 1050, criticized *Butts* as "a remnant of a different social era, when street fighters commonly relied on fists alone to settle disputes. Unfortunately, as this case illustrates, the nature of modern gang warfare is quite different." (*Id.* at p. 1056.)

7

the person he aids and abets commits." The court also found it "more reasonable to believe" that Andrew stabbed O'Rourke; hence, the court concluded that prosecution had not met its "burden with respect to the great bodily enhancement." Therefore, if Brian did not personally inflict great bodily injury on O'Rourke—namely, Brian did not stab O'Rourke—then the court must have found Brian liable for assault with a deadly weapon as an aider and abettor.

Although the juvenile court's judgment is based on the invalid aider and abettor theory, the People assert that "[e]ach of the juvenile court's findings must stand on its own, whether or not they can be reconciled to a logically coherent whole," based on the general rule allowing inconsistent verdicts to stand. (See generally *People v. Lewis* (2001) 25 Cal.4th 610, 656.) Under that rule, "if an acquittal of one count is factually irreconcilable with a conviction on another, or if a not true finding of an enhancement allegation is inconsistent with a conviction of the substantive offense, effect is given to both." (*People v. Santamaria* (1994) 8 Cal.4th 903, 911; see also *People v. Lopez* (1982) 131 Cal.App.3d 565, 571 [an inconsistent verdict is allowed to stand so long as substantial evidence supports the conclusion of the trier of fact].) The People therefore assert that the judgment should be affirmed, because there was sufficient evidence Brian stabbed O'Rourke, even if that conclusion is inconsistent with the not true finding on the personal infliction of great bodily injury allegation.[9]

This is not a case involving inconsistent verdicts. The verdict is perfectly consistent: the juvenile court found the personal infliction of great bodily injury allegation not true because it did not think that Brian stabbed O'Rourke but thought that Brian nonetheless could be guilty of assault with a deadly weapon as an aider and abettor. The juvenile court thus erroneously relied on an inapplicable theory to reach its judgment. The issue, therefore, is whether that error is harmless.

---

[9]    We do not decide whether there was sufficient evidence to support a conclusion Brian stabbed O'Rourke.

8

In this situation, the "nature of this harmless error analysis depends on whether a jury has been presented with a legally invalid or a factually invalid theory.  When one of the theories presented to a jury is legally inadequate, such as a theory which ' "fails to come within the statutory definition of the crime" ' [citations], the jury cannot reasonably be expected to divine its legal inadequacy." (*People v. Perez, supra,* 35 Cal.4th at p. 1233.)  In such circumstances, reversal generally is required unless "it is possible to determine from other portions of the verdict that the jury necessarily found the defendant guilty on a proper theory." (*People v. Guiton* (1993) 4 Cal.4th 1116, 1130.)  "In contrast, when one of the theories presented to a jury is factually inadequate, such as a theory that, while legally correct, has no application to the facts of the case," "we must assess the entire record, 'including the facts and the instructions, the arguments of counsel, any communications from the jury during deliberations, and the entire verdict.' " (*Perez,* at p. 1233.)  We affirm unless a review of the entire record affirmatively demonstrates a reasonable probability that the jury in fact relied on the unsupported theory.  (*Ibid.*)

Here, the prosecution presented a factually invalid theory of liability, i.e, aiding and abetting.  As we have said, the record—including the prosecutor's argument, the juvenile court's comments, and the verdict—affirmatively show that the court relied on that unsupported theory.  We therefore reverse the court's judgment finding true count 1, assault with a deadly weapon and remand with the direction to reduce the finding on count 1 to simple assault[10] (Pen. Code, §§ 240, 241, subd. (a)).[11]

---

[10]     Simple assault is a lesser included offense of aggravated assault. (*People v. McDaniel* (2008) 159 Cal.App.4th 736, 747.)

[11]     Our disposition renders moot the issue raised in Brian's supplemental brief; namely, whether assault with a deadly weapon falls under Welfare and Institutions Code section 707, subdivision (b).

9

## DISPOSITION

We reverse the true finding on count 1 for assault with a deadly weapon and remand for proceedings consistent with our direction to enter a new finding for simple assault.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

EDMON, P. J.

KITCHING, J.