Filed 6/2/21  P. v. Barerras CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E074605 |
| v. | (Super.Ct.No. INF1802113) |
| JORGE BARERRAS, JR., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  F. Paul Dickerson III, Judge.  Affirmed.

Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta and Xavier Becerra, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Genevieve Herbert, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant and appellant Jorge Barerras, Jr., guilty of robbery (Pen. Code, § 211[1]) and actively participating in a criminal street gang (§ 186.22, subd. (a)). The jury found true the allegation that the robbery was committed for the benefit of, at the direction of, or in association with a criminal street gang. (§ 186.22, subd. (b)(1)(C).) The trial court found true the allegation that defendant was previously convicted of attempted residential burglary (§§ 664, 459), which qualified as a prior strike conviction (§§ 667, subds. (c) & (e)(1), 1170.12, subd. (c)(1)) and a prior serious felony conviction (§ 667, subd. (a)). The trial court sentenced defendant to prison for a term of 21 years.

Defendant contends substantial evidence does not support the force or fear element of the robbery conviction, so his robbery conviction must be reduced to petty theft. Further, defendant asserts that if his robbery conviction is reduced to petty theft, then the gang conviction (§ 186.22, subd. (a)) must be reversed and the gang enhancement (§ 186.22, subd. (b)(1)(C)) and prior serious felony enhancement (§ 667, subd. (a)) must be stricken. We affirm the judgment.

**FACTUAL AND PROCEDURAL HISTORY**

Defendant admitted to Desert Hot Springs police officers that he is a member of the West Drive Locos criminal street gang. On the night of October 31, 2018, defendant entered a convenience store in Desert Hot Springs. Defendant picked up an 18-pack of beer, walked toward the register as if he were going to pay, said "West Drive," and

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

walked out of the store without paying for the beer. An employee of the convenience store who had been working at the cash register (Employee), followed defendant outside to the dumpster area. A group of approximately five men were by the dumpster. Employee asked defendant to return the beer. Defendant pulled an object that appeared to be a handgun from his waistband and asked, " 'What's good?' " As a result, Employee stopped trying to retrieve the beer. Defendant left with the beer and the group of men dispersed. Employee called 911.

Desert Hot Springs Police Officer Chris James reviewed the surveillance video from inside the store; the cameras outside the store were not operating. The surveillance video showed defendant taking beer from the cooler and then adjusting a bulky object in his waistband; the object was consistent with a firearm. James took a screenshot from the surveillance video of an image that showed defendant and, on November 2, sent it to other Desert Hot Springs police officers for assistance in identifying defendant.

Police Officer Mayorga recognized defendant and contacted James. Mayorga said he had contact with defendant on November 1. November 1 footage from Mayorga's body camera showed defendant was wearing the same shirt on November 1 that he wore during the robbery on October 31—a black sweatshirt with a white skull.

Desert Hot Springs Police Officer Marcus Futch went to defendant's mother's home and arrested defendant. Police searched defendant's bedroom but did not find a firearm. Defendant admitted to Futch that, on October 31, he went to the convenience store, took an 18-pack of beer, may have said " 'West Drive,' " and was confronted by

3

Employee. Defendant denied that he had a firearm. Futch asked if defendant had an object that appeared to be a firearm, e.g., a toy firearm, and defendant said he did not have such an object.

Employee has lived in Desert Hot Springs for 12 years and, on October 31, 2018, was familiar with the West Drive Locos criminal street gang because it is "a pretty well-known gang within the town." If a person said, "West Drive," Employee would understand that as establishing the person is a gang member. Employee would not be scared by a person saying, "West Drive." However, if the person stole beer, displayed a gun, and said "West Drive," then Employee would be scared. Employee would feel fear because gangs are "typically known to be violent."

## DISCUSSION

Defendant contends substantial evidence does not support the force or fear element of robbery.

" 'A robbery is not completed at the moment the robber obtains possession of the stolen property. The crime of robbery includes the element of asportation, the robber's escape with the loot being considered as important in the commission of the crime as gaining possession of the property. . . . [A] robbery occurs when [a] defendant uses force or fear in resisting [a victim's] attempts to regain the property.' " (*People v. Gomez* (2008) 43 Cal.4th 249, 259.)

" 'To establish a robbery was committed by means of fear, the prosecution "must present evidence 'that the victim was in fact afraid, and that such fear allowed the crime to be accomplished.' " ' [Citation.] Thus, the fear element is subjective in nature.

4

[Citation.] . . . 'The fear is sufficient if it facilitated the defendant's taking of the property. Thus, any intimidation, even without threats, may be sufficient.' [Citation.] However, given the language of section 212[2], the intimidation must not only produce fear, but the fear must be of the infliction of injury." (*People v. Montalvo* (2019) 36 Cal.App.5th 597, 612.)

"Where, as here, a defendant challenges the sufficiency of the evidence on appeal, we review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] . . . [I]t is the jury, not the reviewing court, that must weigh the evidence, resolve conflicting inferences, and determine whether the prosecution established guilt beyond a reasonable doubt. [Citation.] And if the circumstances reasonably justify the trier of fact's findings, the reviewing court's view that the circumstances might also reasonably be reconciled with a contrary finding does not warrant reversal of the judgment." (*People v. Hubbard* (2016) 63 Cal.4th 378, 392.)

---

**2** Section 212 provides, "The fear mentioned in Section 211 may be either:
"1. The fear of an unlawful injury to the person or property of the person robbed, or of any relative of his or member of his family; or,
"2. The fear of an immediate and unlawful injury to the person or property of anyone in the company of the person robbed at the time of the robbery."

Employee testified that the person who took the beer was the person who brandished a firearm at her and that person was wearing a long-sleeved black shirt. The following is the relevant portion of the transcript:

"[Prosecutor]: Why weren't you able to get the beer back?

"[Employee]: Because he took off.

"[Prosecutor]: Did he use a weapon or show a weapon to you?

"[Employee]: He did.

"[Prosecutor]: What was that?

"[Employee]: It was a handgun.

"[Prosecutor]: Where did you see this handgun?

"[Employee]: It was—it was pulled from his waistband."

Officer James testified that Employee told him "Her and another employee then proceeded to run out of—of the store after him and contacted him and a group of males on the east side of the building where the—where he confronted her with a firearm, and they eventually took off running prior to my arrival."

Officer James further testified, "[Employee] stated that she followed the subject who took the beer outside of the store around to the area where the dumpsters were, and she contacted the same subject who confronted her with the firearm. He—she stated he pulled it from his front waistband." Thus, James testified that Employee told him the person who took the beer was the same person who brandished a firearm at her.

In the store's surveillance video, defendant can be seen adjusting a bulky item in his waistband, and the item was consistent with a firearm. While testifying, James

6

identified the person in the video as defendant. When arrested, defendant confessed that he stole the beer. Employee said that she stopped trying to retrieve the beer due to the firearm because she feared the firearm.

The foregoing evidence reflects that the person who stole the beer used a firearm to prevent Employee from retrieving the beer, and the person who stole the beer was defendant. Therefore, substantial evidence supports the finding that defendant used a firearm, which caused fear, to stop Employee from retrieving the beer. Accordingly, substantial evidence supports the force or fear element of defendant's robbery conviction.

Defendant asserts substantial evidence does not support the force or fear element because Employee's description of the person with the firearm did not match defendant. When Employee called 911 she said the group outside consisted of five juveniles or young adults who "were all Mexican." The following exchange occurred during the call:

"Dispatch 2: Okay, all right. Any description of their clothing?

"[Employee]: Uh, yeah. They were wearing—I think one had a black hoodie and jeans and he had like long black hair. It was about like to his shoulders. It was split down the middle. And, uh-uh, yeah.

"Man: Black hair . . .

"[Employee]: There—there was a yeah. That's not all.

"Dispatch 2: Okay. So you just remember the one with the black hoodie and jeans?

"[Employee]:  Yeah.

"Dispatch 2:  Okay.

"[Employee]:  'Cause that's the one that pulled the gun out.

"Dispatch 2:  Oh, I'm sorry.  They pulled a gun out at you?

"[Employee]:  Yeah.  I wouldn't call 911 just for a beer run."

The video surveillance shows that defendant's hair was extremely short, shaved close to his scalp. At trial, during cross-examination, Employee said she had described two people to the dispatcher—one who had the gun and one who was part of the group outside. As Employee testified on cross-examination, the following exchange occurred:

"[Employee]:  There was—the person who pulled out the gun either was the one who had the black hoodie, or the one who had long black hair to his shoulders.  The one with the long black hair was the one that was part of the group.

"[Defense Counsel]:  Okay.

"[Employee]:  And then—then there was one in what I believed to be a hoodie, a black hoodie.

"[Defense Counsel]:  You mean, that's another person?

"[Employee]:  That was the one that was in the—what I believed to be a black hoodie—

"[Defense Counsel]:  Okay.

"[Employee]  —was the one that had pulled a gun on me.

8

"[Defense Counsel]: All right. Okay. My point is, this person[3] doesn't have a black hoodie on, does he?

"[Employee]: No. He's wearing a black long-sleeve—"

On redirect examination, the following exchange occurred:

"[Prosecutor:] Still looking at People's Exhibit No. 9, I believe. [¶] Is this the person at the time you remembered the one in the black hoodie?

"[Employee:] Yes, what I believed to be a black hoodie.

"[Prosecutor:] So when you're telling the 9-1-1 dispatcher about what you perceived, was this prior to watching surveillance cameras?

"[Employee:] Yes.

"[Prosecutor:} And the person you perceived to be inside of the store, you perceived them to have a black hoodie?

"[Employee:] Correct.

"[Prosecutor:] So the person we're seeing in People's Exhibit 9, that's what you are talking about with the black—

"[Employee:] Correct.

"[Prosecutor:] —hoodie is the same person who was outside with the gun; correct?

"[Employee:] Correct."

---

3 Counsel was presumably referring to exhibit No. 9, which is a still frame photograph of defendant taken from the surveillance video.

9

While testifying, Employee clarified that defendant, who is pictured in Exhibit No. 9, was the person who brandished the firearm. Further, as explained *ante*, Employee testified that the person who stole the beer was the same person who brandished the firearm, and defendant admitted stealing the beer. The jury could reasonably rely upon this evidence to conclude it was defendant who brandished the firearm.

Next, defendant contends the jury found that defendant did not personally use a firearm during the robbery so the use of a firearm cannot be relied upon to establish the force or fear element. Specifically, the jury found defendant not guilty on the charge of a felon possessing a firearm (§ 29800, subd. (a)(1)) and found not true the firearm enhancement associated with the robbery (§ 12022.53, subd. (b)).

Our Supreme Court has explained, "It is equally settled that an inherently inconsistent verdict is allowed to stand; if an acquittal of one count is factually irreconcilable with a conviction on another, or if a not true finding of an enhancement allegation is inconsistent with a conviction of the substantive offense, effect is given to both. [Citations.] When a jury renders inconsistent verdicts, 'it is unclear whose ox has been gored.' [Citation.] The jury may have been convinced of guilt but arrived at an inconsistent acquittal or not true finding 'through mistake, compromise, or lenity . . . .' [Citation.] Because the defendant is given the benefit of the acquittal, 'it is neither irrational nor illogical to require [him] to accept the burden of conviction on the counts on which the jury convicted.' [Citation.]" (*People v. Santamaria* (1994) 8 Cal.4th 903, 911; see also *People v. Avila* (2006) 38 Cal.4th 491, 600.)

10

To the extent one views the verdicts as factually inconsistent, that is not a basis for reversal. However, in this case, the verdicts are easily reconciled. The firearm charge restricts a felon's possession of any firearm. (§ 29800, subd. (a)(1).) The firearm enhancement punishes the personal use of a firearm. (§ 12022.53, subd. (b).) The jury was instructed that "[a] firearm is any device designed to be used a weapon, from which a projectile is expelled or discharged through a barrel by the force of an explosion or other form of combustion." (CALCRIM No. 2511; § 16520, subd. (a).) "[T]oy guns obviously do not qualify as a 'firearm,' nor do pellet guns or BB guns because, instead of explosion or other combustion, they use the force of air pressure, gas pressure, or spring action to expel a projectile." (*People v. Monjaras* (2008) 164 Cal.App.4th 1432, 1435.) However, a BB gun or pellet gun "is a 'dangerous weapon' as the term is used in section 12022, subdivision (b)." (*People v. Dixon* (2007) 153 Cal.App.4th 985, 1001.)

Employee testified that she saw a handgun, but she could not be "certain that it was real . . . [¶] . . . [¶] . . . like a live-armored weapon." Officer Futch asked defendant if he had a firearm or an object that appeared to be a firearm, e.g., a replica firearm, and defendant said he did not have either. During closing argument, defendant's trial counsel argued, "[Employee] testified that someone pulled something from his waist or stomach area, but she didn't really know if it was a gun."

The jury may have found defendant not guilty of the firearm charge and found the enhancement allegation untrue because the prosecutor failed to prove that the object brandished by defendant was an actual firearm, as opposed to a replica/toy firearm. If

11

so, the jury could have found the replica/toy sufficient for the force or fear element of robbery, but insufficient for the firearm allegations. Thus, the verdicts are consistent.

Nevertheless, defendant, relying on Employee's statements to the 911 operator describing the person with the gun as having long hair, asserts the jury found an accomplice held the gun. Defendant contends the jury convicted defendant of robbery on an aiding and abetting theory even though such a theory was never presented to the jury. At oral argument in this court, defendant suggested that this court had to explain how the jury could find defendant guilty of robbery if an accomplice held the gun.

In *People v. Lopez* (1982) 131 Cal.App.3d 565, 569, the defendant was convicted of assault with a firearm, but the jury found untrue the allegation that the defendant personally used a firearm during the offense. The defendant asserted the jury must have found the defendant acted as an aider and abettor and therefore the appellate court had to examine the substantial evidence issue under the theory that defendant was an aider and abettor, rather than a principal. (*Ibid.*) The appellate court explained that a defendant who has benefitted from an acquittal in an inconsistent verdict cannot "gain further advantage" from the inconsistency. The appellate court concluded that it was "not limited to [the defendant's] proffered theory in [its] examination of the sufficiency of the evidence." (*Id.* at p. 571.)

We agree with the *Lopez* court. To the extent one believes the jury's verdicts are factually inconsistent in the instant case, that inconsistency does not require that we analyze the evidence under defendant's proffered theory. Factually inconsistent verdicts can stand because they are viewed as acts of mercy, confusion, or compromise

12

by the jury.  We are not required to utilize a defendant's proffered theory reconciling the verdicts.  Rather, we can let the alleged inconsistency stand on the basis that the jury found defendant guilty of the robbery, and due to mercy, confusion, or compromise, decided to acquit on the firearm charges.  Therefore, we decline to explain how substantial evidence supports the force or fear element under the theory proffered by defendant in which defendant stole beer while an accomplice held a firearm.

Defendant contends that if his robbery conviction is reduced to petty theft, then his conviction for actively participating in a criminal street gang must be reversed and the gang enhancement and prior serious felony enhancement must be stricken.  We have concluded that the robbery conviction is supported by substantial evidence, so we will not reduce it to petty theft.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER                      
                                                    J.

We concur:

McKINSTER
           Acting P. J.

FIELDS
                 J.